HARLAN Y. KIMURA #3321
Central Pacific Plaza
220 South King Street, Suite 1660
Honolulu, Hawaii 96813
Telephone No. (808) 541-2521
Facsimile No. (808) 541-3545
E-mail: hyk@aloha.net

Attorney for Defendant
JOSHUA KNEPPER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. CR 05-00191-01 JMS |
|---|---|---|
| Plaintiff, | ) | MEMORANDUM OF LAW |
| vs. | ) | |
| JOSHUA KNEPPER, | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW

I.  FACTS.

In the early part of 2004 Defendant JOSHUA KNEPPER (hereinafter "Knepper") began renting a room in a two-bedroom cottage located at 3042-A Liholani Street in Pukalani, Maui (hereinafter "Cottage"), from Mr. Matthew Souza (hereinafter "Souza"). Souza was renting the Cottage from its owner, Mr.

Kimo Kaiama (hereinafter "Kaiama"). However, Souza had not resided at the Cottage since July of 2004. Based upon Souza having problems with Knepper, and vice-versa (See Exhibit "A" attached hereto and made a part hereof as an indication of the same), their relationship deteriorated to the point where Souza requested Knepper to move out of his room in the Cottage. According to the prior testimony of Souza in this Case, Knepper purportedly vacated the Cottage on or about January 13, 2005 pursuant to a written document which was allegedly signed by Knepper which Souza is no longer able to find. See Exhibit "B" attached hereto and made a part hereof at page 12, line 14-21.

In the early morning hours of January 23, 2005, Souza went to the Cottage with the stated intention to determine if anyone was still living there and to paint the inside of it. However, at that time Souza discovered Knepper was still in the Cottage, along with some of his belongings. Rather than negotiating with Knepper a more realistic move-out date, Souza called the Maui Police Department (hereinafter "MPD") to report him as a Trespasser in the Cottage.

In response to Souza's call, Sergeant Darolyn Poepoe (hereinafter "Poepoe") arrived at the Cottage at approximately 9:13 a.m. Souza then mentioned to Poepoe that his ex-roomate, Knepper, was still in the Cottage although he had been "evicted." Id. at page 44, line 17 to page 45, line 1. As Poepoe and Souza approached the only entrance to the Cottage which was

2

slightly ajar, it closed and the door locked. While Souza reached for the keys in his pocket, Poepoe heard glass breaking in the back of the Cottage. When Poepoe went around to the back of the Cottage she saw Knepper exiting it though his bedroom window. At that point Knepper was directed into a handcuffed position and detained.

After the handcuffs were placed on Knepper, he was not asked his identity or any identification which would reflect the Cottage as his place of residence. Id. at page 52, line 10 to page 53, line 1. Moreover, the police officers at the scene did not continue their investigation to determine whether Knepper was lawfully at the Cottage or trespassing as claimed by Souza. A quick computer search would have revealed that Knepper's last known address was at the Cottage. See Exhibits "C" and "D" attached hereto and made a part hereof. Approximately 45 minutes after Knepper was handcuffed, he was arrested by Officer Myles Won for Criminal Trespass in the First Degree pursuant to Haw. Rev. Stat. § 708-813 (hereinafter "Criminal Trespass"). See Exhibit "E" attached hereto and made a part hereof.

Immediately after Knepper was transported to the police station, he asking the Booking Officer what was his bail for the offense of Criminal Trespass. In response to his question, the Booking Officer advised Knepper that it would be $200.00. However, Officer Won overheard this conversation and

stated to Knepper "Don't you want to know what you're being arrested for before you make bail?" Knepper did not hear anything further from either the Booking Officer or Officer Won until after 1:00 o'clock the next morning when he was re-arrested for: (1) Promoting Dangerous Drug II; (2) Prohibited Acts Related To Drug Paraphernalia; (3) Promoting Detrimental Drug III; (4) Felon In Possession Of Firearm; and (5) Felon In Possession Of Ammunition.

At the hearing in Maui District Court on January 26, 2005 to determine whether there was probable cause to find that Knepper committed the offenses charged by MPD against him, Officer Won admitted that he understood Knepper was residing at the Cottage. See Exhibit "F attached hereto and made a part hereof at page 12, line 23 to age 13, line 1. Secondly, Officer Won also acknowledged that he was not shown any documentation that Knepper was "evicted" from the Cottage as claimed by Souza to Poepoe. Id, at page 13, lines 2-4. Finally, at the Suppression Hearing held in this Case on September 26, 2005, Ms. Jessica Souza (hereinafter "Jessica") testified that the government's exhibits showed items of personal property in the Cottage that belonged to him. Exhibit "B at page 58, line 25 to page 59, line 11.

//

//

//

II.   ARGUMENT.

    A.   Statutory Requirement For Warrantless Arrest.

In the State of Hawaii a police officer may, without a warrant, arrest and detain a person if that police officer has probable cause to believe such person has committed any offense, whether in the police officer's presence or otherwise. Haw. Rev. Stat. § 803-5. When more than one (1) police officer is involved in the warrantless arrest, the knowledge of one may properly be imputed to the others participating in the arrest. State of Hawaii v. Bunker, 67 Haw. 174, 177 (1984). Probable Cause is present "when the facts and circumstances within the officer's knowledge, and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is being committed." Haw. Rev. Stat. § 803-5(b).

In State of Hawaii v. Bunker, 67 Haw. 174, several police officers conducted an investigation of an alleged shooting in Maui. A resident told one (1) of the officers that he overheard the defendant arguing with someone in a very loud voice and threatening to blow his head off. Id. at 175. Another officer learned that the defendant threatened a Caucasian male and to show how serious he was, placed a gun to his own head and fired a round hitting his scalp. Id. A third (3rd) witness told still another officer that she received a telephone call from

two (2) males telling her that a person by the name of "Ike" was armed and after them. Id. Finally, two (2) of the officers knew that the defendant was a felon. Id.

Based upon the above set of facts, the Hawaii Supreme Court found there was sufficient probable cause to arrest the defendant without a warrant. Id. at 177. First, a citizen witness is presumed reliable, especially when corroborated by other witnesses, albeit unidentified. Id. Second, the officer's knowledge that the defendant is a felon and that felons are prohibited from possessing firearms is another specific fact tending to establish probable cause. Id. Finally, the furtive actions of the defendant causing the officers to be apprehensive of their own safety must be taken into consideration when examining the facts and circumstances within the officer's knowledge to determine whether probable cause exists to arrest without a warrant. Id.

      B.    Subsequent Discovery of Additional Facts While Defendant Is Detained May Dissipate Initial Finding Of Probable Cause.

The Ninth Circuit provides law enforcement officers with guidance when probable cause is present at the beginning of the investigation, but turns out to be for naught based upon subsequently discovered evidence. In U.S. v. Ortiz-Hernandez, 427 F.3d 567, 574 (9th Cir. 2005) law enforcement was cautioned that if "probable cause is established at an early state of the investigation, it may be dissipated if the investigating officer later learns additional information that

6

decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity." Id. As a corollary to that rule, police officers "may not disregard facts tending to dissipate probable cause." Id. citing Bigford v. Taylor, 834 F.2d 1213, 1218 (5th Cir. 1988); BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986) ("The continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause."). In other words, officers cannot turn a bind eye to facts and circumstances that would eliminate the probable cause they initially thought they had when effecting a warrantless arrest of a defendant. BeVier v. Hucal, 806 F.2d at 128.

In U.S. v. Ortiz-Hernandez, 427 F.3d 567 the officer suspected the defendant was engaging in illegal drug distribution. However, upon strip-searching him the police officer knew that the defendant had no drugs, no drug paraphernalia, and no other evidence of drug sales on him. At that point the officer was constitutionally obliged to let the defendant go because whatever "suspicion" or "probable cause" the officer had was not confirmed by his subsequent investigation. Id. at 573-75. Nonetheless, the officer kept the defendant in custody because he assumed the defendant "was most likely wanted." Id. at 572. Finally, the officer found the defendant illegally re-entered the United

7

States after keeping him in custody in violation of his Fourth Amendment Rights. Id. at 573.

Another way to look at this issue is to examine whether the investigating officers conducted a reasonable investigation prior to placing the defendant under arrest. In BeVier v. Hucal, 806 F.2d 123 a state police officer (hereinafter "Trooper"): (a) previously heard a child living in the area has been taken to the hospital; (b) observed a tent in a ravine under direct sunlight located approximately 40-50 feet from diesel generators and maintenance equipment; (c) smelled manure from livestock in the area and sanitary facilities were some distance from the tent; and (d) saw two (2) young children in direct sunlight in over 100 degree weather. Id. at 125. Based upon this information, that Trooper arrested the parents without even questioning the babysitter attending to the two (2) young children or the parents he arrested for child neglect.

The Seventh Circuit Court of Appeals (hereinafter "Seventh Circuit") analyzing the applicable state statute prohibiting child neglect noted there was a requirement that the parents "knowingly and willfully" engage in the conduct for which they were being charged. Id. at 126. Consequently, the investigating Trooper needed to have probable cause that the parents knew of their children's predicament but failed to prevent it. Id. He did not. His mistake "was failing to question the parents, the Red Cross Center personnel [who had protective custody

of the children], or the teen-ager watching the children." Id. at 127. Therefore, the Trooper's mistake was unreasonable.

In explaining the duty of the Trooper to investigate, the Seventh Circuit noted that the "amount of information that prudent police will collect before deciding to make a search or an arrest, and hence the amount of probable cause they will have, is a function of the gravity of the crime, and especially the danger of its imminent repetition." Id. In the situation where the information is minimal and inferences weak, but the danger so great (i.e. police searching for two (2) murderers), probable case may still be found. Id. However, where there is no danger of the crime being repeated and/or safety of the public in jeopardy, more investigation may be needed before probable cause is established. Id. n.1.

    C.    There Was No Probable Cause To Arrest Knepper For Criminal Trespass.

After Knepper was handcuffed and detained by Poepoe shortly after arrival at the Cottage, it was incumbent upon all the officers participating in that arrest to investigate whether there were any facts and circumstances to establish probable cause to arrest him for Criminal Trespass. When engaging in that effort, the officers were to assess whether Knepper "knowingly enter[ed] or remain[ed] unlawfully" in the Cottage." Id. In other words, did Knepper enter or remain at the Cottage voluntarily and intentionally and not because of a mistake or accident.

See Standard Criminal Jury Instruction No. 17. Secondly, did Knepper enter or remain at the Cottage illegally. See Black's Law Dictionary 1574 (8th ed. 2004).

In this case, the only facts and circumstances available for the Government to rely upon in support of its claim that there was probable cause Knepper trespassed in the Cottage were: (a) the statement Souza made to Poepoe that Knepper was "evicted" from it; and (b) Poepoe observing Knepper exiting out of the window in his bedroom after hearing the sound of breaking glass. However, Officer Won admitted at the hearing in Maui District Court that he understood Knepper was a resident of the Cottage. Furthermore, Officer Won testified that he was not shown any eviction papers even though Souza told Poepoe that Knepper had been "evicted" from the Cottage. Third, if any of the officers ran a computer check on Knepper they would have discovered that his last known address was at the Cottage. Exhibits "C" and "D". Finally, none of the officers ever announced there presence and therefore, the attempted exit of Knepper through his bedroom window could not be considered an indication of flight from arrest or any criminal activity.

Additionally, the arresting officers did no investigation to determine whether Knepper "knowingly enter[ed] or remain[ed] unlawfully" at the Cottage. Haw. Rev. Stat. § 708-813. First, they did not ask for any identification from Knepper which would confirm that his address was at the Cottage. Second, they

10

did not inquire further with Souza what was the basis for him claiming that Knepper was trespassing, other than to accept his statement Knepper was "evicted" as explained above because he signed a notice that was never produced in which he allegedly agreed to move out by January 13, 2005. Third, they did not investigate further the statement made by Souza that "he was having problems with Knepper" which would indicate that Souza's statements to Poepoe would never rise to the level of being "reasonably trustworthy information." Haw. Rev. Stat. § 803-5(b). Therefore, this mistake by the investigating and arresting officers was unreasonable. BeVier v. Hucal, 806 F.2d at 127.

Based upon all the above, the arresting officers did not have probable cause to arrest Knepper for Criminal Trespass because between the period of time he was handcuffed and detained, and arrested approximately 45 minutes later, those officers did not secure reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that he unlawfully entered or remained in the Cottage. If they had done so, those arresting officers would have concluded that this dispute between Souza and Knepper was actually "a civil matter and [should be pursued] in civil court if no compromise could be met." See Exhibit "A".

/ /

/ /

11

> D. Alternatively, The Initial Probable Cause To Arrest Knepper For Criminal Trespass Would Have Been Dissipated Had The Officers Continued On With Their Investigation.

Alternatively, the officers may have had probable cause to arrest Knepper for Criminal Trespass based upon the initial statements of Souza to Poepoe and observing Knepper crawling out of the window from his bedroom. However, if the officers continued with their investigation and pressed Souza on his statement that Knepper was "evicted" from the Cottage they would have discovered it was not based upon credible evidence. First, the officers did not ask Souza whether he had a Writ Of Possession issued by the Maui district court and executed on it to regain possession of the Cottage and room being rented to Knepper. Second, a quick computer check, and/or telephone call to the clerk of the Maui district court, would disclose Souza did not take any action to legally take back the Cottage. Third, the officers never inquired as to the owners of the furniture and other personal items still located therein after gaining entry into the Cottage. Finally, the officers did not inquire into the strained relationship between Souza and Knepper. See Exhibit "A".

The above investigation required of the arresting officers is entirely reasonable based upon the facts and circumstances of this Case. First, Knepper was already detained and handcuffed preventing him for committing future crimes

and ensuring the safety of the arresting officers. Second, this was only a Criminal Trespass case and there were no exigent circumstances demanding quick action. Finally, "it is incumbent upon law enforcement officials to make a thorough investigation and exercise reasonable judgment before invoking the awesome power of arrest and detention." Moore v. The Marketplace Restaurant, 754 F.2d 1336, 1345-46 (7th Cir. 1985).

Based upon the above, Knepper submits if the officers thoroughly completed their investigation before rushing to conduct a canine search of the backpack, they would have concluded that the incident between Souza and Knepper was a civil matter that should be resolved between themselves in either the Maui district court in a Summary Possession Proceeding or Mediation. Instead, it appears the officers may have used the arrest as a guise to conduct an illegal canine search of Knepper's backpack to secure probable cause for a Search Warrant to open it. See United States v. Hernandez, 55 F.3d 443 (9th Cir. 1995) (A legal stop cannot be used as a pretext to uncover unrelated crimes where there is no reasonable suspicion for the latter.)

> E. Because Knepper's Arrest Was Illegal, All Evidence Obtained Thereafter Is Fruit Of The Poisonous Tree.

It is black letter law that any evidence obtained based upon an illegal arrest is to be suppressed based upon the fruit of the poisonous tree doctrine. See



generally <u>United States v. Oaxaca</u>, 233 F.3d 1154 (9th Cir. 2000). In this case, Knepper's warrantless arrest was illegal because it was either not supported by probable cause, or the initial probable cause would have been dissipated if the officers continued with their investigation into the accusations of Souza that Knepper was trespassing in the Cottage. Therefore, all the evidence obtained from the Cottage should be suppressed.

III.   <u>CONCLUSION</u>.

Based upon all the foregoing, Knepper respectfully requests this Honorable Court to suppress all the evidence obtained subsequent to his illegal warrantless arrest because it was either not supported by probable cause, or the initial probable cause would have been dissipated if the officers continued on with their investigation of Souza's claim that Knepper was trespassing in the Cottage because he was previously "evicted" from it. With the suppression of all the evidence in this case, the Government would be unable to prosecute Knepper and therefore, a dismissal would be in order.

DATED at Honolulu, Hawaii, _____FEB 13 2006_____.

                                            HARLAN Y. KIMURA
                                            Attorney for Defendant
                                            JOSHUA KNEPPER