EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

LORETTA SHEEHAN #4160
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:  loretta.sheehan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00191 JMS |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN OPPOSITION |
| | ) | TO MOTION TO SUPPRESS EVIDENCE |
| v. | ) | DUE TO ILLEGAL ARREST; |
| | ) | CERTIFICATE OF SERVICE |
| JOSHUA KNEPPER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

MEMORANDUM IN OPPOSITION TO MOTION TO
SUPPRESS EVIDENCE DUE TO ILLEGAL ARREST

The United States of America, through Assistant U.S. Attorney Loretta Sheehan, opposes the Motion to Suppress Evidence Due to Illegal Arrest on two grounds.  One, the arrest was not illegal.  Two, there is no evidence which exists as a result of the arrest.

   I.  FACTS

On the morning of January 23, 2005, Sgt. Doralyn Poepoe of the Maui Police Department went to 3042-A Liholani Street in

Pukalani, Maui in response to a 911 call. When she arrived, she met Matthew Souza, who was standing on the roadway. Souza explained to Sgt. Poepoe that he was the renter of the cottage at 3041-A Liholani Street. Souza explained that a former roommate, the defendant, who had been evicted, was sitting inside the cottage. The defendant was smoking crystal methamphetamine. Souza told Poepoe that Souza had come to the house to be sure that the defendant had moved out, and to paint the cottage, but that Souza had discovered the defendant inside.

After Sgt. Poepoe received this information from Souza, she and Souza began to walk up to the carport area of the home. Sgt. Poepoe was in uniform. Inside the carport stood a door which was the only doorway access for the home. As they approached Sgt. Poepoe saw that the door was slightly ajar. Then someone inside closed the door. Sgt. Poepoe checked the doorknob; the door was now locked.

Souza reached into his pocket to retrieve the front door key. As he was attempting to retrieve the key, Sgt. Poepoe heard glass breaking. She ran around to the side of the house, and saw the defendant, crawling out through a broken window. The defendant was more than 3/4 of the way out the window, and glass louvers lay scattered on the ground. At that point Sgt. Poepoe handcuffed and detained the defendant.

Sgt. Poepoe spoke a little bit more with Souza about the defendant's trespass in the residence. At this point Sgt. Poepoe was investigating to see if she should arrest the defendant for Criminal Trespass in the First Degree or for Burglary in the First Degree. During this time, Souza requested that she make checks within the residence as the defendant had been using drugs inside the home.

Sgt. Poepoe entered the home with Souza. She saw that the home appeared abandoned. The cottage was dark; the electricity didn't appear to work, and the bathroom appeared dirty. Furniture was sparse. In a bedroom, a bare mattress was propped up against the wall.

Sgt. Poepoe saw a backpack against the wall, behind the mattress. Souza identified it as the defendant's backpack. Sgt. Poepoe retrieved the backpack.

Sgt. Poepoe walked outside and handed the backpack to MPD Officer Myles Won. Sgt. Poepoe told Officer Won that Souza had identified the backpack as the defendant's. Officer Won turned to the defendant and asked if the backpack was his. The defendant said no.

Officer Won advised that he would be checking the bag for identification. The defendant then changed his story, and said that the backpack was his. Officer Won asked if he could open the backpack. Knepper said no. Officer Won asked whether

any of Souza's property was in the backpack.  The defendant initially said no.  The defendant then said that Souza could look, but he didn't want the police watching.  Officer Won said that he would have to watch, to make sure that nothing was stolen.  The defendant then said that Souza did not have his permission to look in the backpack.  Throughout this exchange, the defendant appeared very nervous about the contents of the backpack.

       As of this point, Sgt. Poepoe had certain information:
1) Souza had called 911 to complain of trespass;
2) Souza had met with her and had told her that the defendant was trespassing as a squatter;
3) someone inside the residence had quickly shut and locked the front door as she had approached the residence;
4) the defendant had attempted to escape by removing and breaking the glass louvers on a side window, and by wriggling out of a side window;
5) Souza had keys to the residence;
6) the condition of the home corroborated the information that Souza had provided, i.e. from all appearances, the defendant did not live there; and
7) the defendant gave inconsistent answers about ownership of the backpack;

8) the defendant appeared extremely nervous about the police looking into his backpack.

With all of this information, the defendant was arrested and booked for Criminal Trespass in the First Degree.

Later that day, while the defendant was in custody, a trained narcotics canine alerted on the backpack to indicate the presence of narcotics. A search warrant was obtained. Inside the backpack was the defendant's identification, a loaded gun, and crystal methamphetamine.

The defendant was provided his <u>Miranda</u> warnings. He declined to provide a statement.

II. <u>ARGUMENT</u>

A. <u>SGT. POEPOE HAD PROBABLE CAUSE TO ARREST DEFENDANT</u>

Law enforcement officers may arrest a suspect without a warrant if there is sufficient probable cause to make the arrest. Probable cause exists when at the time of the arrest, officers conclude that there is a "fair probability that the suspect had committed a crime" based on the totality of circumstances. <u>United States v. Mills</u>, 280 F.3d 915, 920 (9th Cir. 2002); <u>United States v. Valencia-Amezcua</u>, 278 F.3d 901, 906 (9th Cir. 2002).

An arrest is also supported by probable cause when officers have "reasonably trustworthy information" that would lead a "prudent person" in believing that the person being arrested was committing an offense . . . or based on the

"collective knowledge" of agents that they communicate to each other. United States v. Del Vizo, 918 F.2d 821, 825-826 (9th Cir. 1990). A determination of probable cause "requires a 'practical, common-sense' decision based on the totality of the circumstances, including the veracity, basis of knowledge and reliability of the information provided by informants." United States v. Jensen, 425 F.3d 698, 704 (9th Cir. 2005), quoting Illinois v. Gates, 462 U.S. 213, 214 (1983).

"An informant's description of illegal activity is sufficient to establish probable cause if the totality of the circumstances indicate that the tip is reliable." United States v. Elliott, 893 F.2d 220, 223 (9th Cir. 1990), as amended, 904 F.2d 25 (9th Cir.), cert. denied, 498 U.S. 904 (1990). The mere corroboration of innocent details, however, is inadequate to support probable cause to arrest. See United States v. Mendonsa, 989 F.2d 366, 369 (9th Cir. 1993); United States v. Clark, 31 F.3d 831, 834-35 (9th Cir. 1994), cert. denied, 115 S.Ct. 920 (1995).

In the instant case, Sgt. Poepoe was presented with sufficient facts from Matthew Souza, facts which were independently corroborated, to lead a prudent person to believe that the defendant had committed the crime of Criminal Trespass in the First Degree.

One commits the offense of Criminal Trespass in the First Degree if:

> (a) that person knowingly enters or remains unlawfully:
>     (I) in a dwelling or
>     (ii) In or upon the premises of a hotel or apartment building...

Section 708-813(a), Hawaii Revised Statutes.

In this case, Souza presented himself and complained to Sgt. Poepoe that Knepper unlawfully had entered and remained in Souza's home, thus meeting the statutory definition of Criminal Trespass in the First Degree.  The complaint of trespass was corroborated, moreover, in several ways.  First, as Sgt. Poepoe approached the front door, the front door slammed shut.  Someone apparently wanted to avoid the police.  Second, as Sgt. Poepoe stood at the closed and locked front door, Souza pulled out the keys to the residence, thus corroborating his report that this was, in fact, his home.  Third, as Sgt. Poepoe waited for Souza to open the door, the defendant broke a glass window and attempted to wriggle out the back.  With this corroboration, Souza's tip proved reliable, and there existed a "fair probability" that the defendant had committed the crime of Criminal Trespass in the First Degree.

Beyond this, however, Sgt. Poepoe had information that the defendant had entered and remained unlawfully in the premises presumably to use Souza's cottage as a safe haven to smoke

7

crystal methamphetamine. Souza informed Poepoe that he had seen the defendant using drugs. Souza asked Poepoe to check to see whether there were drugs remaining inside. When the backpack which contained the defendant's drugs was recovered, the defendant denied that the backpack was his. Then he admitted it. The defendant gave permission to Souza to look inside the backpack, then withdrew it. The defendant appeared very nervous and concerned that the police would see what was in the backpack.[1] These additional facts provided Sgt. Poepoe with even greater probable cause to believe that the defendant had been remaining in Souza's cottage unlawfully, i.e. that the defendant had been using Souza's cottage simply as a safe place to smoke ice. That was why the defendant lied about ownership of the backpack; that was why the defendant vacillated about Souza searching the backpack; that was why the defendant was so nervous. He had crystal methamphetamine in the backpack and was trying to hide it.

      The defendant complains, however, that facts arose after his arrest which dissipated probable cause, rendering his arrest illegal. The defendant cites <u>United States v. Ortiz-</u>

---

[1] The United States recognizes that the defendant's statements, made in custody and in response to questions, prior to administration of <u>Miranda</u> warnings, are not admissible at trial. They may, however, be considered in determining probable cause to arrest and to search the backpack. <u>United States v. Patterson</u>, 812 F.2d 1188, 1193 (9th Cir. 1987), <u>citing</u> <u>Oregon v. Elstad</u>, 470 U.S. 298, 307 (1985)

Hernandez, 427 F.3d 567 (9th Cir. 2005) in support of his argument.

The defendant misreads Ortiz-Hernandez. The Ortiz-Hernandez Court did not state that an arrest becomes illegal if potential defenses arise after the arrest. The Ortiz-Hernandez Court ruled only that because it could not say that the district court's factual conclusions were "clearly erroneous," it concurred with the district court's decision of inadequate probable cause to arrest. Id. at 573.

The lower court in Ortiz-Hernandez had found an arrest illegal because it had been skeptical of the claim that a police sergeant had seen the defendant swallow a bag of heroin. The lower court had refused to credit that testimony because the police sergeant had been far away from the defendant at the time of the alleged swallowing, and, more importantly, the alleged swallowing (a tactic used to hide heroin when confronted by law enforcement) had occurred when the defendant had not known that he was under police surveillance. Id. at 574. Without this lynchpin of probable cause, the lower court concluded, the arrest was illegal. Id.

The Ortiz-Hernandez Court called it a close case, but sided with the district court, in that credibility calls on testimony were subject to clearly erroneous standard. Id.

The defendant complains, however, that Sgt. Poepoe did

not perform an adequate investigation, and claims that if she had, probable cause to arrest would have dissipated, citing BeVier v. Hucal, 806 F.2d 123 (7th Cir. 1986). The BeVier Court found inadequate probable cause to arrest a mother and father for the knowing and willful abuse of their children after the children were found in a neglected state, in the care of a babysitter. Id. at 127. The BeVier Court faulted the officer for failing to ask individuals at the scene as to the efforts the parents had made to care for their children. Id.

Again, the defendant misstates the holding of a case. The BeVier Court was very clear that while a police officer must pursue reasonable avenues of investigation, "an officer who has established probable cause on every element of the crime need not continue investigating to check our leads or to test the suspect's claim of innocence." Id. at 128, citing Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 437-442 (7th Cir. 1986)(emphasis added); see also Forest v. Pawtucket Police Department, 377 F.3d 52, 57 (1st Cir. 2004)(once police officers are presented with probable cause to support an arrest, no further investigation is required at that point); Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996)(officers are not required to conduct mini-trials before arrest). The problem in BeVier is that the officers had not established probable cause to believe that the parents had neglected their children

knowingly or wilfully, i.e. had failed to investigate a necessary element of the crime. BeVier v. Hucal, 806 F.2d at 126.

That cannot be said of the case at bar. The officers conducted a thorough investigation and uncovered more than enough evidence arrest the defendant for Criminal Trespass in the First Degree. The fact that the defendant slammed the front door shut, broke a window, tried to run away, provided inconsistent answers regarding his backpack and behaved in a very nervous manner all support the conclusion that the defendant was committing the offense of Criminal Trespass in the First Degree.

The defendant offers assorted arguments as to what the MPD officers should have done. The government disputes all of his suggestions. First, the fact that the defendant had, at some earlier arrest, provided the Liholani Street address as his own is irrelevant. The defendant did, at some point in time, have permission to live in the home. The point is, on January 23, 2005, he no longer did. Second, Section 708-813(a), H.R.S. does not require prior exclusion via a Writ of Possession. That is a legal concept, part of the civil eviction process, and is unrelated to the criminal trespass law. For this reason, the officers did not have to inquire as to whether Souza had a Writ of Possession or whether he had started a legal eviction process. Finally, the officers were not required to ask questions regarding furniture or a strained relationship between Souza and

11

the defendant as they had established probable cause on every element of the offense.  Sgt. Poepoe and Officer Won were not required to conduct a mini-trial.  Nor were they required to take the word of the defendant, who already had lied to them.  The facts pointed to probable cause.  With these facts, they were required to arrest the defendant.

    B. MPD OBTAINED EVIDENCE FROM THE BACKPACK INDEPENDENTLY OF DEFENDANT'S ARREST

  This Court should refuse to suppress the evidence found within the defendant's backpack because it has an independent basis.  Assuming, arguendo, that the defendant's arrest was illegal, the crystal methamphetamine, firearm, ammunition, and identification found within the backpack are not "fruits" of a "poisonous tree," and thus should not be suppressed.

  The Supreme Court has developed three exceptions to the "fruit of the poisonous tree" doctrine: the independent source doctrine, the attenuated basis doctrine and the inevitable discovery doctrine.  United States v. Ramirez-Sandoval, 872 F.2d 1392, 1396 (9th Cir. 1989).  The independent source exception acts to admit evidence that has been found through sources unrelated to the original illegal search.  Id., citing Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920).  Independent source evidence is not fruit of the poisonous tree because it was discovered through means apart from any illegal conduct.  Id.

The Ninth Circuit reversed a district court's suppression of a firearm found in a car due to the independent source doctrine in United States v. Pulliam, 405 F.3d 782, 787 (9th Cir. 2005). In Pulliam, the police had stopped a car due to a malfunctioning rear light. Officers had ordered the driver and the defendant, who was seated in the front passenger seat, from the car, had patted them down, had handcuffed them, and had searched the car. They had found a firearm under the front passenger seat. The defendant eventually had admitted to owning the firearm. Id. at 784.

The Pulliam Court reversed the lower court's suppression of the firearm because the defendant had not shown that the firearm was "in some sense the product" of his unlawful detention. Id. at 787. The officers had not interrogated him during his illegal detention, and had found nothing incriminating on him during the patdown. "Even if they had immediately released him rather than detaining him, the search of the car still would have occurred, and the gun would have been found. The discovery and seizure of the gun was simply in no sense the product of any violation of Pulliam's fourth amendment rights." Id.

The same is true of the case at bar. When the defendant attempted to run away, he left his backpack behind. Even assuming that the detention and arrest of the defendant was

improper, the police seized the backpack as abandoned property. Souza independently identified the backpack as belonging to the defendant and as probably having drugs inside. Independent of his arrest for criminal trespass, a trained narcotics dog ran by the bag and alerted to the scent of narcotics. Independent of the defendant's arrest, officers obtained a search warrant for the search of the bag, and found drugs, a loaded firearm, and the defendant's identification inside. The defendant made no statements regarding the contents of the backpack post-arrest. There simply are no "fruits" of any "poisonous tree." For this reason, the defendant's motion to suppress should be denied.

### III.  CONCLUSION

This Court should deny the defendant's Motion To Suppress Evidence Due to Illegal Arrest on two grounds: first, that the arrest of the defendant was supported by probable cause and not illegal, and second, that the contents of the defendant's backpack were discovered through a source independent of the defendant's arrest.

DATED:  February 27, 2006, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By  /S/ Loretta Sheehan
   LORETTA SHEEHAN
   Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

**Served Electronically through CM/ECF:**

Harlan Y. Kimura    hyk@aloha.net    February 27, 2006


DATED: February 27, 2006, at Honolulu, Hawaii.


/s/ Iris Tanaka