ORIGINAL

HARLAN Y. KIMURA #3321
Central Pacific Plaza
220 South King Street, Suite 1660
Honolulu, Hawaii 96813
Telephone No. (808) 521-4134
Facsimile No. (808) 521-0361
E-mail: hyk@aloha.net

Attorney for Defendant
JOSHUA KNEPPER

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 0 4 2006

at ___ o'clock and ___ min ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSHUA KNEPPER,<br><br>Defendant. | CR. NO. CR 05-00191-01 JMS<br><br>DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE DUE TO ILLEGAL ARREST FILED FEBRUARY 13, 2006; CERTIFICATE OF SERVICE<br><br>Date:   April 10, 2006<br>Time:   11:00 a.m.<br>Judge:  J. Michael Seabright |

DEFENDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE
DUE TO ILLEGAL ARREST FILED FEBRUARY 13, 2006

COMES NOW Defendant JOSHUA KNEPPER (hereinafter "Knepper") by and through his attorney, HARLAN Y. KIMURA, and hereby submits this Reply Memorandum Of Law in response to the Government's

Memorandum In Opposition To Motion To Suppress Evidence Due To Illegal Arrest filed herein on February 27, 2006 (hereinafter "Government's Memo").

I.   ARGUMENT.

   A.   THE INFERENCES TO BE DRAWN FROM THE FACTS OF THIS CASE, AS ARGUED BY THE GOVERNMENT, ARE **NOT REASONABLE** TO WARRANT A PRUDENT PERSON IN BELIEVING KNEPPER WAS COMMITTING AN OFFENSE.

The inferences to be drawn from the facts of this case, as suggested by the Government, are NOT REASONABLE INFERENCES that would lead a prudent person in believing that Knepper committed the offense of Criminal Trespass in the First Degree. First, the reasonable conclusion to be arrived at based upon Souza's statement that Knepper unlawfully entered and remained in the Cottage having previously rented the same and agreeing to vacate it on or about January 13, 2005 is that the pending dispute between them would best be resolved in a Summary Possession Proceeding brought pursuant to Haw. Rev. Stat. Chapter 666. See Stevens v. Rose, 298 F.3d 880, 883 (9th Cir. 2002) [By definition, probable cause can only exist in relation to criminal conduct and therefore, civil disputes cannot give rise to probable cause.]. Second, there no basis for the Government to claim that Knepper "apparently wanted to avoid the police" by slamming the front door shut because Sgt. Peopoe NEVER announced

2

her presence BEFORE that action took place. Therefore, this inference is also not a reasonable one which may be relied upon by a prudent person.

Additionally, Souza's display of his keys to the Cottage only indicates that he had a right to its entry; it does not indicate that Knepper was illegally present in it. Moreover, it is equally plausible that Knepper's attempted exit via the back of the Cottage was to avoid Souza because Knepper was having problems with him. In fact, this is the more likely conclusion because as previously stated, Sgt. Poepoe NEVER announced her presence at any time before Knepper was handcuffed and detained.

The other inferences proffered by the Government also would not necessarily lead a prudent person to conclude that Knepper committed the offense of Criminal Trespass In The First Degree. First, it was approximately 9:13 in the morning and therefore, the Cottage could not have been dark as described by the Government. Government's Memo at 3. Secondly, the Government admits that there was still furniture in the Cottage and therefore, an equally reasonable conclusion is that Knepper was there to remove the remaining items belonging to him because of his previous agreement to move out. Finally, Knepper may have appeared nervous and susceptible to giving inconsistent answers to the arresting officers. However, it is important to note that Knepper was already handcuffed and detained with the full power of MPD upon him. Consequently, it is

understandable for Knepper to appear nervous and not thinking straight under these circumstances.

The Government also argues that MPD continued its investigation after detaining Knepper to determine whether there was probable cause to also arrest him for Burglary In The First Degree, and possibly drug-related offenses. Government's Memo at 3 and 7-8. However, at the point in time that Knepper was initially handcuffed by MPD it only had REASONABLE SUSPICION to detain him because the sole fact it had that arguably would indicate any criminal activity or guilt is that he broke the glass louvers in the back of the Cottage when attempting to exit from it. As explained above, all the other inferences surrounding this factual situation are NOT REASONABLE.

Since MPD only had REASONABLE SUSPICION to detain Knepper, it had a duty to continue its investigation to determine whether there was probable cause to arrest him for either: (a) Criminal Trespass In The First Decree; (b) Burglary In The First Degree; and/or (c) drug-related offenses. United States v. Torres-Sanchez, 83 F.3d 1123, 1129 (9th Cir. 1996). [In determining the length of time for an investigative stop to be constitutionally reasonable, the critical inquiry is whether the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendants.] Based upon the

testimony provided by Sgt. Poepoe in the previous Suppression Hearing held on September 26, 2005, MPD did continue its investigation but NOT with respect to the Criminal Trespass In The First Degree Charge because Knepper was not asked any questions nor were follow-up questions posed to Souza. Apparently, MPD was more concerned with finding probable cause to arrest Knepper for either Burglary In The First Degree and/or drug-related offenses. Therefore, when Sgt. Poepoe entered the Cottage at the request of Souza she was looking for evidence to establish probable cause that Knepper was involved in drug activity.

Based upon the prior testimony of Souza at the previous Suppression Hearing, and MPD Police Report No. 05-07249, Sgt. Poepoe was escorted by Souza into the Cottage because "he was concerned that there may be drugs still within the residence." MPD Supplementary Police Report No. 05-07249 at 2 (a copy of which is attached as Exhibit "E" to Knepper's Motion To Suppress Evidence Due to Illegal Arrest filed herein on February 13, 2006 and hereinafter "Knepper's Motion To Suppress"). Therefore, from this juncture in MPD's investigation it no longer was concerned with the Criminal Trespass In The First Degree Charge. Consequently, Knepper's subsequent arrest for Criminal Trespass In The First Degree was ILLEGAL because MPD only had REASONABLE SUSPICION as indicated above.

At best, MPD may also have had REASONABLE SUSPICION that Knepper was involved in drug activity solely by reason of the fact that Souza relayed to Sgt. Poepoe he observed Knepper "within the livingroom (sic) area, [where] there was a box filled with drugs on the table as well as a glass pipe." Exhibit "E" at 2 attached to Knepper's Motion To Suppress. However, Sgt. Poepoe was not able to find any evidence of drugs. Id. The only thing that Sgt. Poepoe found and SEIZED was a backpack that Souza represented belonged to Knepper which she took to Officer Won. Id.

It was illegal for MPD to have SEIZED Knepper's backpack because there was no probable cause that it contained contraband or evidence of a crime. United States v. Langford, 314 F.3d 892, 894 (7th Cir. 2002). Sgt. Poepoe did not find the box of drugs and glass pipe that Souza told her he saw in the living room next to Knepper. Exhibit "E" at 2. In fact, Sgt. Poepoe reported that "no drugs were found within the residence." Id.

Finally, MPD continued its investigation into the Burglary In The First Degree Charge that was also being made by Souza. The items that allegedly were stolen comprised of a"1994 White XR250-C dirtbike (sic) type motorcycle that was street legal" and "two sets of tires and rims". Id. Obviously, those alleged stolen items were not on Knepper's person, nor would they have fit in his

back pack.  In other words, MPD also did not have probable cause to arrest Knepper for Burglary In The First Degree.

>  B. SINCE KNEPPER CONFIRMED OWNERSHIP OF THE BACKPACK WHILE BEING DETAINED AND BEFORE HE WAS ARRESTED, THE "FRUIT OF THE POISONOUS TREE" DOCTRINE MANDATES SUPPRESSION OF THE CONTENTS THEREIN DUE TO HIS ILLEGAL ARREST.

The Government argues that Knepper abandoned his backpack when he attempted to exit the Cottage and therefore, abandoned it in the process.  Government's Memo at 13-14.  Therefore, MPD's seizure of the backpack was independent of Knepper's warrantless arrest for Criminal Trespass In The First Degree.  Id. at 14.  Although the Government acknowledges it in its recitation of the facts of this case, it fails to mention in that argument that Knepper immediately thereafter asserted ownership over the backpack and denied MPD permission to open it.  Government's Memo at 3.  This occurred BEFORE MPD claims to have arrested Knepper.  Id. at 4.  Therefore, when MPD transported Knepper to the police station the backpack had to go with him.

Under the aforesaid circumstances, the backpack must be considered a "fruit" of the illegal warantless arrest of Knepper.  See generally United States v. Oaxaca, 233 F.3d 1154 (9th Cir. 2000).  Furthermore, the independent source doctrine will not save the Government because there is a CAUSAL LINK

between the illegal arrest and backpack.  See <u>United States v. Pelullo</u>, 173 P.3d 131, 136 (1999) [The independent source doctrine recognizes that where the causal link between the constitutional violation and later-revealed evidence is tenuous or non-existent, the later-revealed evidence is untarnished by the constitutional violation and therefore, may be admissible.].  The causal link is that the backpack was identified as belonging to Knepper by Souza, and he re-asserted ownership over it before being illegally arrested.

      C.    ALTERNATIVELY, UNDER <u>TERRY v. OHIO</u> A TWO (2) HOUR DETENTION OF THE BACKPACK TO CONDUCT A DOG SNIFF IS AN UNREASONABLE SEIZURE.

Even assuming there was probable cause to effect a warrantless arrest of Knepper for Criminal Trespass In The First Degree, there was no probable cause to seize the backpack as explained above because MPD did not have any evidence that it contained contraband or evidence of a crime.  Since there was no probable cause to seize the backpack, and the independent source doctrine will not save the Government, the Government is only left with the argument that it had REASONABLE SUSPICION to believe there was contraband in Knepper's backpack based upon the lone statement from Souza that he observed Knepper in the living room area of the Cottage next to a box filled with drugs on the table as well as a glass pipe.  Under these circumstances, a <u>Terry v. Ohio</u> type of analysis

8

would be employed to determine whether the DETENTION of the backpack met constitutional requirements.  See United States v Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

The applicable facts for this Terry Analysis are that the backpack was seized by MPD sometime after Knepper was handcuffed and detained, but before MPD claims that he was arrested for Criminal Trespass In The First Decree at approximately 9:59 a.m. on January 23, 2005.  Next, the canine search of that backpack did not occur until 11:50 a.m. that morning according to the Affidavit of Officer Tod Wong in his Affidavit For Search Warrant, SW 2005-500.  Therefore, without probable cause to hold the backpack MPD took at least two (2) hours to conduct a dog sniff of it after illegally seizing it.

The aforesaid action of MPD in detaining the backpack for over two (2) hours was unconstitutional under the Terry v. Ohio line of cases which permits the Government to detain a person's effects only based upon reasonable, articulable suspicion, premised on objective facts, that the personal property detained contains contraband or evidence of a crime.  United States v. Place, 103 S.Ct. at 2642.  In the Place Case, the luggage of a suspected drug courier (i.e. Mr. Place) was detained for approximately ninety (90) minutes in order for the government to conduct a canine search of it.  Id. at 2640.  To make matters worst, one (1) of the agents told Mr. Place that they were going to take the luggage to a

federal judge to try to obtain a search warrant and that Mr. Place was free to accompany them. Id.

Based upon these facts, the Supreme Court first concluded that "the principles of Terry and its progeny would permit the officer to detain the luggage **briefly** to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope." Id. at 2644. [emphasis added]. Secondly, the "particular course of investigation that the agent intended to pursue here – exposure of [Mr. Place's] luggage, which was located in a public place, to a trained canine – did not constitute a 'search' within the meaning of the Fourth Amendment." Id. at 2645. However, the length of the detention (i.e. ninety (90) minutes) alone precludes the conclusion that the seizure was reasonable in the absence of probable cause. Id.

In this case the Government asserts the backpack should be analyzed independently of the illegal warrantless arrest. Government's Memo at 12. Apparently the Government assumes it had reasonable suspicion to detain Knepper's backpack to conduct the dog sniff for a **brief** period time. However, since MPD took longer than that found in the Place Case to constitute an illegal seizure, the evidence found in the backpack must be suppressed. Furthermore, it is of no consequence that Knepper was in custody at the same time his back pack was detained because his arrest was illegal. Alternatively, Knepper should have

10

been granted bail immediately upon requesting the same after arriving at the police station. Instead, MPD refused to tell Knepper anything until he was also written up for the instant drug charges early the following morning after this arrest on January 23, 2005. As with the Place Case, MPD's violation of Knepper's Fourth Amendment rights was exacerbated by its failure to accurately apprise him of the circumstances surrounding the illegal seizure and detention of his backpack.

II.     CONCLUSION.

Based upon all the foregoing and arguments previously raised by Knepper in his Motion To Suppress Evidence Due To Illegal Arrest, he respectfully requests this Honorable Court to suppress all the evidence obtained subsequent to his illegal warrantless arrest because it was: (a) not supported by probable cause; (b) the initial probable cause would have been dissipated if the officers continued on with their investigation of Souza's claim that Knepper was trespassing in the Cottage because he was previously "evicted" from it; and/or (c) MPD's initial seizure of Knepper's backpack was illegal because there was no

//

//

//

probable cause supporting the same, or alternatively, detention of Knepper's backpack for over two (2) hours was an unreasonable seizure thereof.

DATED at Honolulu, Hawaii, _____APR - 4 2006_____.

_____
HARLAN Y. KIMURA
Attorney for Defendant
JOSHUA KNEPPER

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was duly served upon the following parties listed below, in the manner described thereto, at their last-known addresses, on   APR - 4 2006   .

|  | By U.S. Mail | By Hand Delivery |
|---|---|---|
| EDWARD H. KUBO, JR., ESQ.<br>United States Attorney<br>LORETTA SHEEHAN, ESQ.<br>Assistant U.S. Attorney<br>Room 6100, PJKK Federal Building<br>300 Ala Moana Blvd., Box 50183<br>Honolulu, Hawaii 96850<br><br>Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |  | X |

DATED at Honolulu, Hawaii,   APR - 4 2006   .

HARLAN Y. KIMURA
Attorney for Defendant
JOSHUA KNEPPER