HARLAN Y. KIMURA  #3321
Central Pacific Plaza
220 South King Street, Suite 1660
Honolulu, Hawaii  96813
Telephone No. (808) 521-4134
Facsimile No. (808) 521-0361
E-mail:  hyk@aloha.net

Attorney for Defendant
JOSHUA KNEPPER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. CR 05-00191-01 JMS |
|---|---|---|
| Plaintiff, | ) ) ) | MEMORANDUM OF LAW |
| vs. | ) ) ) | |
| JOSHUA KNEPPER, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW**

I.   **FACTS**.

Sergeant Darolyn Poepoe (hereinafter "Sgt. Poepoe") testified at the two (2) prior Suppression Hearings that at approximately 9:13 a.m. on January 23, 2005 she arrived at 3042-A Liholani Street, in Pukalani, Maui (hereinafter "Cottage"), and was met by Mr. Matthew Souza (hereinafter "Souza").  Upon her

arrival Souza relayed to Poepoe that earlier in the morning he observed Defendant JOSHUA KNEPPER (hereinafter "Knepper") in the living room area of the Cottage with a box of drugs, as well as a glass pipe. However, when Sgt. Poepoe subsequently searched the Cottage upon Souza's request, no drugs were found in the Cottage.

While Sgt. Poepoe and Souza were in the Cottage searching for drugs, both of them observed an "AMERICAN UNI" black/grey colored backpack (hereinafter "Backpack") in the room that was rented by Souza to Knepper. After taking a picture of it, Sgt. Poepoe took the Backpack to Officer Myles Won (hereinafter "Officer Won") and asked him to obtain the consent of Knepper to search it. Officer Won testified that he received the Backpack from Poepoe at 9:34 a.m. on January 23, 2005 and transported it to the Wailuku Police Station (hereinafter "police station") along with Knepper sometime thereafter.

Immediately after Knepper was transported to the police station, he asked the Booking Officer what was his bail for the offense he was initially charged with; Criminal Trespass In The First Degree, a misdemeanor. In response to his question, the Booking Officer advised Knepper that it would be $200.00. However, Officer Won overheard this conversation and stated to Knepper "Don't you want to know what you're being arrested for before you make bail?" Knepper did not hear anything further from either the Booking

Officer or Officer Won until after 1:00 o'clock the next morning when he was re-arrested for: (1) Promoting Dangerous Drug II; (2) Prohibited Acts Related To Drug Paraphernalia; (3) Promoting Detrimental Drug III; (4) Felon In Possession Of Firearm; and (5) Felon In Possession Of Ammunition.

From the time the Backpack was seized by Sgt. Poepoe and given to Officer Won at approximately 9:34 a.m., Knepper was never advised of what was happening to his Backpack, how long he would be without its use, and/or when he could expect it to be returned to him. It is Knepper's position that had been been permitted to timely make bail, his situation would be no different than that of a traveler in an airport whose luggage was being detained by the authorities to conduct a canine search.

II. ARGUMENT.

    A. THERE WAS NO PROBABLE CAUSE FOR SGT. POEPOE TO SEIZE THE BACKPACK FROM KNEPPER'S BEDROOM.

The Backpack could only be SEIZED by Sgt. Poepoe if she had Probable Cause that it contained contraband or evidence of a crime. United States v. Langford, 314 F.3d 892, 894 (7th Cir. 2002). However, there was no Probable Cause in this case because Sgt. Poepoe did not find the box of drugs or glass pipe that Souza reported he saw earlier that morning when

first encountering Knepper in the living room area of the Cottage. In fact, Sgt. Poepoe admitted in her Supplementary Report No. 05-07249 at Page 2 that "[n]o drugs were found within the [Cottage.]" See Defendant's Exhibit "A" Admitted Into Evidence at Second Suppression Hearing held on April 10, 2006. Therefore, the SEIZURE of the Backpack by Sgt. Poepoe was illegal. United States v. Langford, 314 F.3d at 894

The Government argued previously that Knepper abandoned his backpack when he attempted to exit the Cottage and therefore, abandoned it in the process. In that event, the Government concludes, Sgt. Peopoe's seizure of the Backpack was independent of Knepper's warrantless arrest for Criminal Trespass In The First Degree. However, Knepper confirmed his ownership of the Backpack when questioned by Officer Won. See Defendant's Exhibit "B" Admitted Into Evidence at Second Suppression Hearing held on April 10, 2006. As a result of Knepper's acknowledgment of ownership over the Backpack he reasserted his reasonable expectation of privacy to the same. Kyllo v. United States, 533 U.S. 27, 33 (2001).

Since there was no Probable Cause for Sgt. Poepoe to take the Backpack from Knepper's bedroom, and Knepper had a reasonable expectation of privacy to the same, Sgt. Poepoe's SEIZURE of the Backpack was ILLEGAL and therefore, its contents must be suppressed.

4

B.   ALTERNATIVELY, UNDER <u>TERRY v. OHIO</u> A TWO (2) HOUR DETENTION OF THE BACKPACK TO CONDUCT A DOG SNIFF IS AN UNREASONABLE SEIZURE.

Even assuming this Honorable Court finds that Knepper abandoned his Backpack and therefore, he did not have a reasonable expectation of privacy thereto, the Government may only keep the Backpack for a brief period of time before such action constitutes a SEIZURE. See <u>United States v Place</u>, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Under these circumstances, a <u>Terry v. Ohio</u> type of analysis should be employed to determine whether the DETENTION of the backpack met constitutional requirements. <u>Id</u>.

The applicable facts for this <u>Terry Analysis</u> are that the Backpack was seized by Sgt. Poepoe and given to Officer Won at approximately 9:34 a.m. on January 23, 2005. See Defendant's Exhibit "B" Admitted Into Evidence at Second Suppression Hearing held on April 10, 2006. Next, the canine search of that backpack did not occur until 11:50 a.m. that morning according to the Affidavit of Officer Tod Wong in his Affidavit For Search Warrant, SW 2005-500. See Government's Exhibit "1" Admitted Into Evidence at Second Suppression Hearing held on April 10, 2006. Therefore, without probable cause to hold the backpack MPD took at least two (2) hours to conduct a dog sniff of it after seizing it.

5

The aforesaid action of MPD in detaining the Backpack for over two (2) hours was unconstitutional under the Terry v. Ohio line of cases which permits the Government to detain a person's effects only based upon reasonable, articulable suspicion, premised on objective facts, that the personal property detained contains contraband or evidence of a crime. United States v. Place, 103 S.Ct. at 2642. In the Place Case, the luggage of a suspected drug courier (i.e. Mr. Place) was detained for approximately ninety (90) minutes in order for the government to conduct a canine search of it. Id. at 2640. To make matters worst, one (1) of the agents told Mr. Place that they were going to take the luggage to a federal judge to try to obtain a search warrant and that Mr. Place was free to accompany them. Id.

Based upon these facts, the Supreme Court first concluded that "the principles of Terry and its progeny would permit the officer to detain the luggage **briefly** to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope." Id. at 2644. [emphasis added]. Secondly, the "particular course of investigation that the agent intended to pursue here – exposure of [Mr. Place's] luggage, which was located in a public place, to a trained canine – did not constitute a 'search' within the meaning of the Fourth Amendment." Id. at 2645. However, the length of the detention (i.e.

ninety (90) minutes) alone precludes the conclusion that the seizure was reasonable in the absence of probable cause. Id.

In this case, from the time Knepper acknowledged ownership of the Backpack also at approximately 9:34 a.m., he was not provided any information concerning: (a) the disposition of it; (b) how long he would be without its use; and/or (c) when he would get it back. Secondly, the canine search of the Backpack did not occur until 11:50 a.m. that same day. Thirdly, if Knepper was permitted to timely make bail because his initial charge was only a misdemeanor, the constitutional analysis for the detention of the Backpack should be the same as that found in the Place Case. In that event, the Government may only detain the Backpack to conduct the dog sniff for a **brief** period time. However, since MPD took longer than that found in the Place Case to constitute an illegal seizure, the evidence found in the Backpack must be suppressed. Moreover, MPD's violation of Knepper's Fourth Amendment rights was exacerbated by its failure to accurately apprise him of the circumstances surrounding the illegal seizure and detention of the Backpack.

## II.    CONCLUSION.

Based upon all the foregoing, Knepper respectfully requests this Honorable Court to suppress the Backpack and its contents because its SEIZURE

was NOT supported by Probable Cause. Alternatively, the detention of Knepper's Backpack for over two (2) hours was an unreasonable seizure thereof.

DATED at Honolulu, Hawaii, __APR 1 4 2006_____.

_____
HARLAN Y. KIMURA
Attorney for Defendant
JOSHUA KNEPPER