HARLAN Y. KIMURA  #3321
Central Pacific Plaza
220 South King Street, Suite 1660
Honolulu, Hawaii  96813
Telephone No. (808) 521-4134
Facsimile No. (808) 521-0361
E-mail:  hyk@aloha.net

Attorney for Defendant
JOSHUA KNEPPER

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. CR 05-00191-01 JMS |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF LAW |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSHUA KNEPPER, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

### <u>MEMORANDUM OF LAW</u>

I.    <u>FACTS.</u>

On January 23, 2005 at 6:05 p.m. Canine Handler Officer Tod Wong

(hereinafter "Handler Wong") of the Maui Police Department presented his

Affidavit For Search Warrant (hereinafter "Affidavit") to State of Hawaii Maui

District Court Judge Reinette W. Cooper (hereinafter "Judicial Officer") in an

attempt to establish that there was Probable Cause for the issuance of Search

Warrant No. 2005-500 (hereinafter "Search Warrant").  The only applicable

paragraphs in the Affidavit in support of a finding that there was Probable Cause

to search Defendant JOSHUA KNEPPER's "AMERICAN UNI" black/grey

backpack were:

   7.   That Affiant has attended the United States Border Patrol
        National Canine Facility and completed the Canine Instructor's
        Course, which consisted of 10 weeks of training.  That Affiant
        is currently certified as a Canine Trainer and re-certifies every
        two years;

                              . . .

   17.  That Affiant has received specialized training from California
        Narcotic Canine Association "CNCA" and that Affiant along
        with Canine "Driem" passed the "CNCA" canine certification
        course;

   18.  That during the dates of July 1994 through January 1995,
        Affiant and his canine "NICKY" received over two hundred
        (200) hours of specialized training in locating and indicating on
        various controlled substances.  "NICKY" will alert to
        Marijuana, Cocaine, Hashish, Heroin, Methamphetamine and
        other controlled substances.  "NICKY" will also alert to the
        scent thereof coming from currency, notes, documents, and
        containers such as baggage, parcels, mail, cargo, dwellings and
        motor vehicles, and/or other evidence that may have been
        utilized in the trafficking or distribution of illicit drugs.  That
        this training was conducted by Sergeant Ramsay ANAKALEA
        of the Maui Police Department's Vice Narcotics/Canine Unit,
        that Affiant and canine "NICKY" passed a canine certification
        exam on January 12, 1995, and re-certify annually;

                              . . .

   20.  That during the dates of April 2001 through October 2001,
        Affiant and his "new" canine "Driem" incurred over two

hundred (200) hours of specialized training as a canine team. That the training of canine "Driem" was conducted by Canine Instructor Tod WONG, of the Maui Police Department and that on October 9, 2001 canine "Driem" passes a canine certification exam and is re-certified annually and is currently certified (refer to above information listed under line no. 18);

. . .

23.    That on January 23, 2005, at approximately 11:50 a.m., Affiant conducted a canine screening utilizing the Maui Police Department's Detection Canine "Driem". That shortly thereafter, "Driem" alerted/indicated to the above described backpack. The alert/indication shows the odor of a controlled substance emanating from within the backpack;

. . .

25.    That based on "Driem's" alert and indication, on the above-described backpack and the information obtained from Officer WON. (sic) Affiant believes that concealed within the above-described backpack is a controlled substance, and Affiant desires to search said backpack; and

See Exhibit "A" attached hereto and made a part hereof.

Based upon the above representations of Handler Wong, the Judicial Officer authorized the issuance of the Search Warrant. However, a close inspection of the Affidavit indicates it was constitutionally defective.

II.    ARGUMENT.

A.    The Affidavit Does NOT Adequately Set Forth The Qualifications Or Reliability Of "Driem"

According to the Affidavit, the only qualifications of "Driem" as a drug detection dog is that he "received specialized training from California

3

Narcotic Canine Association" and "incurred over two hundred (200) hours of specialized training." See Exhibit "A" at ¶¶ 17 and 20. However, the Affidavit lacks any information as to what kind of "specialized training" was received by "Driem" at the California Narcotic Canine Association. Id. at ¶ 17. Similarly, the Affidavit fails to mention what kind of "specialized training" over the period from April 2001 through October 2001 "Driem" and Handler Wong participated in to justify the former's reliability to detect "controlled substances". See Grant v. City of Long Beach, 315 F.3d 1081, 1086 (9th Cir. 2002) [A search warrant based upon a canine sniff must be also contain evidence of the reliability of the drug detection dog as a safeguard against faulty canine identifications].

Specifically to this case, the Affidavit is void of any averments that "Driem" had been trained to detect Marijuana or Methamphetamine. The only statement remotely related to this crucial requirement is that "'NICKY' will alert to Marijuana, Cocaine, Hashish, Heroin, Methamphetamine and other controlled substances." Exhibit "A" at ¶ 18. There is no such representation with respect to "Driem". See Exhibit "A".

The Government may argue that the text in the parenthetical at the end of Paragraph 20 in the Affidavit implies "Driem" received specialized training to "alert to Marijuana, Cocaine, Hashish, Heroin, Methamphetamine and other controlled substances." Compare Id. at ¶ 20 with ¶ 18. However, a plain reading

4

of the last sentence in Paragraph 20 indicates that the text in the parenthetical only refers to the "canine certification exam" referred to in Paragraph 18.  Moreover, there is no reference in either Paragraph No. 20, or Paragraph No. 18, as to what kind of "canine certification exam" was given to "Driem".  Likewise, the "specialized training" that "Driem" received from the California Narcotic Canine Association is silent as to what type of "controlled substances" he has been trained to detect.  Id. at 17.  Therefore, the only conclusion that may be reached after reading Paragraph Nos. 17, 18 and 20, is that "Driem" passed some kind of "canine certification exam" for something or other.

Secondly, there is no mention of who or what organization conducted the "canine certification exam" referred to in Paragraph No. 18.  In response, the Government may argue that the last sentence in Paragraph No. 18 may be read as Sergeant Ramsay ANAKALEA of the Maui Police Department's Vice Narcotics/Canine Unit (hereinafter "Trainer Anakalea") having conducted the "canine certification exam" of "Driem".  Compare Id. at ¶ 20 with ¶ 18.  However, the Affidavit is silent as to the length of employment or qualifications of Trainer Anakalea.  See Exhibit "A".  Therefore, this lack of detail further cuts against the reliability of "Driem" to have made an accurate "alert" of the Backpack to establish Probable Cause for the issuance of the Search Warrant.  See United States v. Lingenfelter, 997 F.2d 632, 639 (9th Cir. 1993) [A canine sniff alone can

supply the probable cause necessary for issuing a search warrant if the application for the warrant establishes the dog's reliability.].

       Finally, there is no criteria set forth in the Affidavit to determine what constitutes "passed" when "Driem" was administered the "canine certification exam." See Exhibit "A". Consequently, it is entirely possible that "Driem" could have "alerted" correctly only fifty-one percent (51%) of the time and "passed the canine certification exam." Although this standard may be acceptable in a Civil Case, it is never reliable enough to support a finding of Probable Cause for the issuance of a search warrant. See United States v. Lingenfelter, 997 F.2d at 639 [The drug sniffing dog in that case never gave a false alert or failed to detect the drug and narcotic training aids that he was directed to find].

       Based upon the lack of specificity in the Affidavit concerning the qualifications of "Driem", as well as the reliability of his drug-detection ability, there could not have been a finding of Probable Cause. Therefore, the Search Warrant is defective rendering the subsequent search of the Backpack based upon the same unconstitutional.

      B.    There Is Also No Specificity With Respect To The Qualifications Of Handler Wong.

The only indication that Handler Wong was qualified as a canine handler for a drug detection dog is that he "attended the United States Border

Patrol National Canine Facility and completed the Canine Instructor's Course, which consists of 10 weeks of training." Id. at ¶ 7. However, the Affidavit does not specify WHEN Handler Wong was "certified" as a Canine Trainer nor WHEN was his last re-certification. Id. Therefore, this lack of information also calls into question Handler Wong's qualifications as "Driem's" handler.

Secondly, Handler Wong was also the trainer for "Driem" according to the Affidavit. Id. at ¶ 20. This poses serious credibility problems with Handler Wong's averments in the Affidavit because he had a vested interest in the performance of "Driem" having also trained him. As such, we have another fact that calls into question the finding of Probable Cause in the Search Warrant.

Not only are the qualifications and reliability of "Driem" in question based upon the above discussion, Handler Wong's qualifications and his potential conflict of interest serving in dual roles with respect to "Driem" may have caused him to subconsciously, if not consciously, cause the "alert." Consequently, the "alert" fails to meet the reliability test embraced by the Ninth Circuit, as well as its sister circuits. See e.g., United states v. Ludwig, 10 F.3d 1523, 1527 (10th Cir. 1993) ["a dog alert usually is at least as reliable (for the presence of drugs) as many other sources of probable cause" unless "the particular dog has a poor accuracy record"] and United States v. Diaz, 25 F.3d 392, 394 (6th Cir. 1994) ["For

7

a positive dog reaction to support a determination of probable cause, the training and reliability of the dog must be established."].

C.  There Is No Specificity Of How "Driem" "Alerted/Indicated" To The Backpack.

Handler Wong merely states that he "conducted a canine screening utilizing the Maui Police Department's Detection Canine 'Driem' [and] shortly thereafter, 'Driem' alerted/indicated to the above described backpack." Id. at ¶ 23. However, Handler Wong does not state exactly what "Driem" did that constitutes an "alert/indication" that there was a controlled substance in the backpack. See Exhibit "A". Furthermore, we have no indication as to the reaction of "Driem" to the other items that presumably would have been involved in the "canine screening."

We now have four (4) defects in the Affidavit, including the failure of Handler Wong to define and/or describe the action of "Driem" that he represents constituted an "alert/indication" of a controlled substance in the Backpack. First, the qualifications of "Driem" are suspect because we are not told in the Affidavit what kind of "specialized training" he participated in with Handler Wong, or what kind of "controlled substances" "Driem" is able to detect. Second, there is no criterion or numerical benchmark to determine whether "Driem" "passed the canine certification exam". Even if it did, and depending upon its value, "passed"

8

may not meet constitutional muster  See <u>United States v. Lingenfelter</u>, 997 F.2d at 639  [The drug sniffing dog in that case never gave a false alert or failed to detect the drug and narcotic training aids that he was directed to find].  Third, there are no dates indicating when Handler Wong was certified as a Canine Handler or re-certified in that capacity.  Moreover, there is a conflict of interest in Handler Wong attesting to the performance of "Driem" when he was one the one who trained him.  Obviously, Handler Wong will not tell us that "Driem" performed poorly because that would be a direct reflection upon himself.

> D.    The Affidavit Is Further Lacking In The Description Of
>        <u>The Impartiality Of The Dog Sniff Line-Up.</u>

The last fatal defect in the Affidavit is the complete absence of a description of the dog sniff line-up.  Similar with a photo line-up, the dog sniff line-up should not be suggestive of any particular item in that line-up.  See <u>Grant v. City of Long Beach</u>, 315 F.3d at 1086  [A major miscarriage of justice has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification].  However, we do not know by reviewing the Affidavit whether there were four (4) backpacks, or three (3) items void of any odors and Knepper's Backpack.  Likewise, the Judicial Officer did not and therefore, her finding of Probable Cause is equally suspect.  <u>United States v.</u>

Lingenfelter, 997 F.2d at 639 ["A magistrate's determination of probable cause is reviewed under the "substantial basis" standard."].

III.    CONCLUSION.

Based upon all the foregoing, Knepper respectfully requests this Honorable Court to suppress all the evidence obtained from the search of his Backpack pursuant to the Warrant because the Affidavit was constitutionally defective.

DATED at Honolulu, Hawaii,  APR 1 4 2006 _____.

_____
HARLAN Y. KIMURA
Attorney for Defendant
JOSHUA KNEPPER