EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

RONALD G. JOHNSON #4532
Chief, Major Crimes

LORETTA SHEEHAN #4160
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:  loretta.sheehan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00191 JMS |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN OPPOSITION |
| | ) | TO MOTION TO SUPPRESS |
| v. | ) | EVIDENCE IN BACKPACK DUE |
| | ) | TO LACK OF PROBABLE CAUSE, |
| JOSHUA KNEPPER, | ) | OR ALTERNATIVELY, |
| | ) | UNREASONABLE DELAY IN |
| Defendant. | ) | CONDUCTING CANINE SEARCH; |
| | ) | CERTIFICATE OF SERVICE |
| _____ | ) | |

TABLE OF CONTENTS

                                                              PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . i-ii

I.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 6

     A.   No Fourth Amendment Seizure Occurred . . . . . . . 6

     B.   Assuming, Arguendo, a Seizure, the
          Seizure of Defendant's Knapsack was
          Reasonable Under the Fourth Amendment . . . . . . 11

          1.   Probable Cause Existed
               to Seize the Knapsack . . . . . . . . . . . 11

          2.   Defendant's Possessory
               Interest Was Minimal or Technical . . . . . 17

          3.   The Police Acted With Due Diligence . . . . 19

     III. CONCLUSION . . . . . . . . . . . . . . . . . . . 21

TABLE OF AUTHORITIES

CASES                                                                PAGE(S)

California v. Acevedo,
    500 U.S. 565 (1991) . . . . . . . . . . . . . . . . . . . 12

Chambers v. Maroney,
    399 U.S. 42 (1970) . . . . . . . . . . . . . . . . . . . . 12

County of Riverside v. McLaughlin,
    500 U.S. 44 (1991) . . . . . . . . . . . . . . . . . . . . 9

Segura v. United States,
    468 U.S. 796 (1984) . . . . . . . . . . . . . 13, 17, 18

State v. Armstrong,
    189 Mont. 407, 616 P.2d 341 (1980) . . . . . . . . . . 10

State v. Langley,
    62 Haw. 79, 611 P.2d 130 (1980) . . . . . . . . . . 8, 9

State v. Vance,
    61 Haw. 291, 602 P.2d 933 (1970) . . . . . . . . . . . 9

United States v. Aldaz,
    921 F.2d 227 (1990) . . . . . . . . . . . . . . . 14, 20

United States v. Brown,
    884 F.2s 1309 (9th Cir. 1989),
    cert. denied, 493 U.S. 1025 (1990) . . . . . . . . . 7, 12

United States v. Chadwick,
    433 U.S. 1 (1977) . . . . . . . . . . . . . . . . . . . 12

United States v. England,
    971 F.2d 419 (9th Cir. 1992) . . . . . . . . . . . . . . 6

United States v. Gill,
    280 F.3d 923 (9th Cir. 2002) . . . . . . . . . . . 14, 20

United States v. Hernandez,
    313 F.3d 1206 (9th Cir. 2002) . . . . . . . . . . . . 19

United States v. Jacobson,
    466 U.S. 109 (1984) . . . . . . . . . . . . . . . . . . . 6

i

<u>CASES</u>                                      <u>PAGE(S)</u>

<u>United States v. Johns,</u>
        469 U.S. 478 (1985)  . . . . . . . . . . . . . . . . 12, 14

<u>United States v. Johnson,</u>
        990 F.2d 1129 (9th Cir. 1992)  . . . . . . . . . . . . . 7

<u>United States v. Licata,</u>
        761 F.2d 537 (9th Cir. 1985)  . . . . . . . . . . . . . 15

<u>United States v. Place,</u>
        462 U.S. 696 (1983)  . . . . . . . . . . . . . 13, 15, 18

<u>United States v. Respress,</u>
        9 F.3d 483 (6th Cir. 1993)  . . . . . . . . . . . . 14

<u>United States v. Van Leeuwen,</u>
        397 U.S. 249 (1970)  . . . . . . . . . . . . . . . . 13, 14


<u>RULES AND STATUTES</u>                          <u>PAGE(S)</u>

Haw. Rev. Stat. § 708-813(a)  . . . . . . . . . . . . . . 11

Haw. Rev. Stat. § 712-1243  . . . . . . . . . . . . . . . 12

MEMORANDUM IN OPPOSITION TO MOTION TO SUPPRESS
EVIDENCE IN BACKPACK DUE TO LACK OF PROBABLE CAUSE, OR,
ALTERNATIVELY, UNREASONABLE DELAY IN CONDUCTING CANINE SEARCH

The United States of America, through Assistant U.S. Attorney Loretta Sheehan, opposes the Motion to Suppress Evidence Based on Delay in Executing Search Warrant filed by the defendant, Joshua Knepper, on April 14, 2006, on two separate grounds.

First, Maui Police Department officers did not "seize" the defendant's knapsack within the meaning of the Fourth Amendment on January 23, 2005, and therefore, suppression is not permitted.  Second, and in the alternative, if the defendant's knapsack was "seized" by the Maui Police Department, the detention[1] of the knapsack was reasonable, given that 1) from the moment they touched the knapsack, MPD had probable cause, not reasonable suspicion, that the knapsack contained contraband or evidence of illegal activity; 2) the defendant, who was in custody and thus unable to keep possession of his knapsack, had at best a "minimal or technical" possessory interest in his

_____

[1]The defendant's Motion to Suppress Evidence in Backpack Due to Lack of Probable Cause, or, Alternatively, Unreasonable Delay in Conducting Canine Search only challenges the two hours of the MPD's initial hold on the defendant's knapsack to the time that the MPD drug dog, Driem, alerted to the knapsack, presumably because the defense position is that only reasonable suspicion existed during the two hour interval (from about 9:59 a.m. to about 11:50 a.m.), and probable cause existed after Driem alerted.  The defendant's motion does not challenge the approximate nine hours from initial hold by MPD to execution of the search warrant.

knapsack; 3) the MPD acted diligently on January 23, 2005 to obtain and to execute the search warrant.

I.    FACTS

On January 23, 2005, a Sunday, at about 9:15 a.m., uniformed Maui Police Department Police Officer Doralyn Poepoe detained the defendant, Joshua Knepper, for further investigation after she: 1) received a dispatch call of a burglary type case in progress at 3042-A Liholani Street; 2) met with Matthew Souza outside 3042-A Liholani Street, who stated that the defendant was trespassing as a squatter within Souza's residence at 3042-A Liholani Street, and currently inside the residence, doing drugs; 3) observed the front door close and lock as she approached the front door of the home; 4) heard glass breaking around the side of the home; 5) caught the defendant wriggling out of a broken side window located at 3042-A Liholani Street.  Officer Poepoe brought the defendant to MPD Officer Myles Won to detain while she conducted further investigation.

Matthew Souza used his key to open the home.  From all appearances, no one lived in the home.  The lights didn't work; barely any furniture was inside.  No personal items could be found.  The bathroom contained no toiletry items and it appeared that the toilet had not been flushed for an extended period of time.  Inside the room that the defendant used to occupy, a bare mattress had been propped up against a wall.  Empty dresser

drawers lay strewn across the floor.  No clothes hung in the closet.  No personal items remained in the room.

While no drugs were immediately apparent inside the home, inside the defendant's former bedroom, just below the window from which the defendant had been attempting to escape, Officer Poepoe found a knapsack.  Souza identified the knapsack as belonging to the defendant.  Officer Poepoe picked up the knapsack and brought it to Officer Myles Won.  At 9:34 a.m. Officer Myles Won first detained the defendant's knapsack, for further investigation.

Officer Myles Won asked the defendant if it was his knapsack.  The defendant said no.  Officer Myles Won stated that he would be looking in the knapsack for identification.  The defendant then said that the knapsack was, in fact, his.  Officer Myles Won asked for consent to look in the knapsack, as he had to check to see if any of Matthew Souza's property was inside.  The defendant said that he would not give consent.  The defendant re-considered, and stated that he would allow Matthew Souza to look for items belonging to Souza, but that he didn't want the police looking into the knapsack.  Officer Won told the defendant that if Souza looked into the knapsack, then the police had to watch. The defendant then withdrew his offer of having Souza look into the knapsack.

3

Officer Won arrested the defendant at 9:59 a.m., and transported the defendant and the defendant's knapsack to the MPD station located in Wailuku.  The defendant was fingerprinted, photographed, and booked.  The defendant's knapsack was placed into evidence.  First, the officers suspected that the knapsack contained contraband or evidence of illegal activity.  Second, even if no suspicion existed, the MPD was required to safeguard the personal property of all persons held in custody.

Once at the station house, Officer Won contacted his supervisor, who contacted Lt. Wally Tom of the Vice Division regarding Officer Won's belief that drugs and/or paraphernalia were inside the defendant's knapsack.  At about 11:00 a.m. to 11:30 a.m., Lt. Tom assigned Officer Tod Wong to assist Officer Won in running a canine trained to alert to the odor of drugs past the knapsack.  Officer Wong was off-duty at the time of the assignment.  Once notified, however, Officer Wong (dog handler) telephoned Officer Won and obtained the circumstances surrounding the investigation.  Officer Wong (dog handler) and Officer Won agreed to meet up-country, in Makawao, so that Officer Wong could run a dog past the knapsack.  This measure saved time in that Officer Wong and his canine were located up-country, near Makawao.

Officer Won immediately took the knapsack to Makawao.  At about 11:50 a.m., Officer Wong (dog handler) ran "Driem" past

the knapsack which had been placed on the ground among other items.  Narcotics trained canine "Driem" alerted to the defendant's knapsack, indicating the presence of narcotics inside.

Officer Wong (dog handler) took possession of the knapsack at about 12:00 noon, in anticipation of obtaining a search warrant.  Officer Wong and Driem drove down to the Wailuku Police Station, a drive of at least one-half hour.  At the station house, Officer Wong collected the written reports of Officers Poepoe and Won, and copies of the Poloroid photographs which Officer Poepoe had taken of 3042-A Liholani Street. He drafted a search warrant, and made the written reports and copies of photographs "Attachment A" to the warrant.  He located the off-duty judge via telephone, and agreed to meet the judge at her home, which was upcountry.  Officer Wong and Driem drove back upcountry, and went to the home of Maui District Court Judge Reinette Cooper.

At 6:05 p.m., Judge Cooper signed the search warrant.

Officer Wong drove back to the Wailuku Police Station. At approximately 7:00 p.m., he executed the search warrant on the defendant's knapsack.  Inside he found: 1) a Charter Arms .38 special revolver, which was loaded with five (5) live rounds of Winchester .38 spl&P hollow point bullets, 2) a glass smoking pipe containing the residue of crystal methamphetamine, 3) two

marijuana joints, 4) a pack of Zig-Zag rolling paper, an envelope addressed to "Joshua Knepper," 5) seven (7) yellow colored plastic "zip-loc" type packets containing crystal methamphetamine (total of 10.43 grams), 6) over 100 empty plastic "zip-loc" type packets, 7) a digital gram scale, 8) a cut piece of drinking straw, 9) a folded card (loading device), and 10) two County of Maui title and registration certificates for vehicle #MKR-644, the lien holder being "Knepper, Joshua W."

II.  ARGUMENT

    A.  No Fourth Amendment Seizure Occurred

       This Court should deny the defendant's Motion to Suppress as the MPD did not seize the defendant's knapsack within the meaning of the Fourth Amendment when they took the knapsack to the station with the defendant as there was no meaningful interference with the defendant's possessory interest in the knapsack.

       A seizure under the Fourth Amendment occurs only "when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobson, 466 U.S. 109, 113 (1984).  The Ninth Circuit has echoed that "it is the extent of the interference with the defendant's possessory interest in his property...that determines whether a seizure has occurred." United States v. England, 971 F.2d 419, 421 (9th Cir. 1992).

The Ninth Circuit found "no meaningful interference," and therefore, no seizure, where narcotics officers diverted a suitcase just before it was loaded on to an airplane in <u>United States v. Brown</u>, 884 F.2s 1309, 1311 (9th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1025 (1990).  The <u>Brown</u> Court held that because the brief detention of the suitcase, and exposure to a narcotics canine, "in no way interfered with his travel or frustrated [the appellant's] expectations with respect to [the appellant's] luggage," no seizure had occurred under the Fourth Amendment. The Ninth Circuit affirmed <u>Brown</u> in <u>United States v. Johnson</u>, 990 F.2d 1129, 1132 (9th Cir. 1992).  The <u>Johnson</u> Court declined to find that officers, who removed the appellant's luggage from a cart, and exposed it to a narcotics dog, had seized the appellant's luggage.  The <u>Johnson</u> Court held that "Johnson's only interest was that the airline, as his bailee, would place the luggage on the next plane, which was to leave about two hours after his plane.  The entire process...was completed prior to the time the luggage would have been placed on the airplane...<u>Because nothing that the officers did interfered with the appellant's possessory interests in his luggage prior to the dog sniffing, there was no seizure of the luggage</u>."  <u>Id</u>. (emphasis added).

In the instant case, MPD did nothing which would interfere with the defendant's possessory interest in his knapsack.  At the time of the defendant's arrest, as in every

arrest, MPD was under an obligation to safeguard the defendant's property found with the defendant.  Once Officer Won arrested the defendant, Officer Won was obliged to take the defendant, and the defendant's personal effects, to the station.  At the station, due to safety concerns, the defendant was separated from all his personal items, but the MPD had to keep the defendant's possessions under lock and key to ensure that they could be surrendered to the defendant once the defendant made bail.  In this case, the defendant never made bail.  Because he was continuously incarcerated, the defendant never was in a position to assert a possessory interest in his knapsack.

On this last point, the defendant's Motion to Suppress speculates that there <u>might</u> have been an interference with a possessory interest, had the defendant been able "to timely make bail because his initial charge was only a misdemeanor."  This argument should be rejected as 1) completely speculative (that he would have made bail at all), and 2) unsupported by any facts to show that MPD denied him bail.  Most importantly, however, this argument should be rejected in that 3) the defendant was not entitled to bail when he was first brought to the police station in Wailuku, Maui.

The Hawaii Supreme Court ruled that one who has been arrested for a misdemeanor or petty misdemeanor is not entitled to immediate release on bail in <u>State v. Langley</u>, 62 Haw. 79, 611

8

P.2d 130 (1980) and State v. Vance, 61 Haw. 291, 602 P.2d 933 (1970).  An arrestee is entitled to "release without unnecessary delay."  What constitutes "unnecessary delay" requires consideration of all the fact and circumstances at the time. State v. Langley, 62 Haw. at 81, 611 P.2d at 132.  The Vance Court found the continued detention of the defendant, whose mother was present with his bail money, correct because further temporary incarceration was "necessary to calm him down and to prevent him from immediately reinstigating his harassment." State v. Vance, 61 Haw. at 301; 602 P.2d at 940-41.  The Langley Court similarly found that, notwithstanding the minor nature of the crime for which the arrest was made, that the defendant's disruptive behavior warranted his continued detention without bail.  State v. Langley, 62 Haw. at 81, 611 P.2d at 132.

        Section 804-4, Hawaii Revised Statutes, moreover, does not require a time by which bail must be set.  The Supreme Court has held that a person held in custody must be afforded a probable cause determination within 48 hours, and has suggested that "those proceedings which arise very early in the pretrial process--such as bail hearings and arraignments" also should occur within the 48 hour limit.  County of Riverside v. McLaughlin, 500 U.S. 44, 58 (1991) (emphasis added).

        In this case, if there was a delay in establishing bail from the defendant's arrival at the Wailuku station house until

11:50 a.m., when Driem alerted, the MPD was wise to make such a delay, because they had <u>probable cause</u> to believe that the defendant had committed a second offense, i.e. Promoting Dangerous Drugs in the Third Degree.  Given the probable cause for this second offense, and the need to determine the appropriate level of bail, the police had to be afforded a full and fair opportunity to complete their investigation.  <u>Accord</u> <u>State v. Armstrong</u>, 189 Mont. 407, 616 P.2d 341 (1980)(though defendant arrested on misdemeanor shoplifting charge for which station house bail available, where defendant was a major suspect in homicide at the time, the police had not only right to refuse bail but the duty to detain him).

The defendant puts forward no law to suggest that he was entitled to bail immediately.  State of Hawaii case law, in fact, holds to the contrary.  Further, the defendant puts forward no facts to suggest that the police unreasonably delayed bail.  Federal law suggests that bail only has to be offered within 48 hours.

The government reiterates that there was no meaningful interference with the defendant's possessory interest while he was in custody, and therefore, no "seizure."  Any minor delay which may have existed in providing bail, moreover, is completely irrelevant.

B.    Assuming, Arguendo, a Seizure, the
      Seizure of Defendant's Knapsack was
      Reasonable Under the Fourth Amendment

In the alternative, the United States argues that the seizure of the defendant's knapsack was reasonable under the Fourth Amendment and thus, suppression is not warranted. The approximate two hours[2] that it took to run Driem past the defendant's knapsack was reasonable under the Fourth Amendment as 1) probable cause, not reasonable suspicion, existed to believe that the defendant's knapsack contained contraband or evidence of illegal activity; 2) during that time, any possessory interest held by the defendant was, at best, minimal or technical; and 3) whatever the level of suspicion to seize the knapsack, whether it be reasonable suspicion or probable cause, the seizure was reasonable in that the police exercised due diligence in obtaining and executing the search warrant.

1.    Probable Cause Existed
      to Seize the Knapsack

As the Court noted at the April 10, 2006 hearing, probable cause existed as of the moment that the defendant was caught wiggling out of the side window to arrest the defendant for both Criminal Trespass in the First Degree, a violation of Section 708-813(a), Hawaii Revised Statutes, and for Promoting

---

[2]As noted, the defendant only challenges the two hour time period, from about 9:59 a.m. to about 11:50 a.m. as an unreasonable seizure.

Dangerous Drugs in the Third Degree, a violation of Section 712-1243, Hawaii Revised Statutes.  Given the probable cause for Dangerous Drugs in the Third Degree, common sense dictates that probable cause also existed that the defendant's knapsack contained illegal drugs or paraphernalia as well.  "[P]robable cause is a flexible, common sense standard."  Texas v. Brown, 460 U.S. 730, 742 (1983).  It requires only that facts be available to officers which would warrant a reasonably prudent person that a container may hold contraband or evidence of crime.  Id.

The Supreme Court has ruled that where officers have probable cause to believe that a container holds contraband or evidence of a crime, they may seize the container, pending issuance of a search warrant.  United States v. Chadwick, 433 U.S. 1, 13 (1977) (detention of footlocker based on probable cause permissible),  overruled on other grounds, California v. Acevedo, 500 U.S. 565, 580 (1991) (container in automobile can be searched without warrant as part of automobile exception to warrant requirement); see also Chambers v. Maroney, 399 U.S. 42, 51 (1970)(reasonable to seize and impound an automobile on the basis of probable cause, for "whatever period is necessary to obtain a warrant for the search.").  Where probable cause exists to effect a seizure, the duration of the seizure pending issuance of the search warrant must be reasonable.  See, e.g., United States v. Johns, 469 U.S. 478, 487 (1985)(while Court finds 3-day

12

seizure based upon probable cause, pending search of truck reasonable, Court does "not suggest that police officers may indefinitely retain possession of a vehicle and its contents before they complete a vehicle search....Nor do we foreclose the possibility that the owner of a vehicle or its contents might attempt to prove that delay in the completion of a vehicle search was unreasonable because it adversely affected a privacy or possessory interest."). The permissible delay, however, is much greater when the police have probable cause, as opposed to reasonable suspicion. Compare Segura v. United States, 468 U.S. 796 (1984), (19 hour seizure of apartment based on probable cause while agents obtained search warrant reasonable under Fourth Amendment) with United States v. Place, 462 U.S. 696, 709 (1983)(90 minute seizure of luggage based on reasonable suspicion not reasonable under Fourth Amendment).

       The Supreme Court discussed the amount of delay permissible based upon reasonable suspicion and that permissible based upon probable cause in United States v. Van Leeuwen, 397 U.S. 249 (1970). The Van Leeuwen Court approved the seizure of a mailed parcel for 1 ½ hours based on reasonable suspicion. "Detention for 1 ½ hours--from 1:30 p.m. to 3:00 p.m.--for an investigation was not excessive; and at the end of that time probable cause existed for believing that the California package was part of an illicit project." Id. at 252. The Van Leeuwen

Court then approved waiting a full 27 and one-half additional
hours before obtaining a warrant, in that it appeared that a
second parcel might be involved and officials in another state
could not be reached at night.  Id. at 253.  "Detention for this
limited time was, indeed, the prudent act rather than letting the
packages enter the mails and then, in case the initial suspicions
were confirmed, trying to locate them en route and enlisting the
help of distant foreign officials in serving the warrant."  Id.

        Since Van Leeuwen, the Ninth Circuit similarly has
excused lengthy seizures of containers where probable cause
exists, or where reasonable suspicion develops into probable
cause.  See, e.g., United States v. Gill, 280 F.3d 923 (9th Cir.
2002)(2 day delay while investigators developed probable cause,
followed by a 4 day delay while investigators awaited the
signature of a magistrate judge on search warrant reasonable);
United States v. Aldaz, 921 F.2d 227 (1990)(2 day delay while
investigators obtained canine for dog sniff, followed by 5 hour
delay between dog sniff and execution of warrant reasonable);
accord United States v. Johns, 469 U.S. 478, 484 (1985)(where
officers could have conducted warrantless searches of packages
within car at scene based on probable cause, officers also may
search packages found within car three days later, in Tucson DEA
warehouse); see also United States v. Respress, 9 F.3d 483, 488
(6th Cir. 1993)(10 hour delay between seizure of suitcase and

14

issuance of warrant reasonable under Fourth Amendment, given existence of probable cause, not reasonable suspicion).

The existence of probable cause, as opposed to reasonable suspicion, is what distinguishes United States v. Place, 462 U.S. 696 (1983) from the case at bar.  The Place Court itself was careful to distinguish situations involving probable cause from situations involving reasonable suspicion.  Where an officer has reasonable suspicion, the officer may "detain the [container] briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope."  Id. at 706.  Where an officer has probable cause, however, the officer may seize the item, "pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present."  Id. at 701.  The Place Court recognized the need to prevent the disappearance of potential evidence as one such exigency which would permit seizure.  Id.; see also United States v. Licata, 761 F.2d 537, 544 (9th Cir. 1985)(the "usual risk of loss of contraband left unsecured" and the fear that a third party could pick up the parcel of over 100 pen guns if the parcel left the airport provides sufficient exigency to justify immediate seizure).

In the instant case, probable cause existed that the defendant's knapsack contained drugs and/or paraphernalia from

15

the moment the knapsack was spotted by Officer Poepoe. Matthew Souza had reported that the defendant was unlawfully trespassing in the residence, and doing drugs. Matthew Souza's first hand complaint was corroborated in many ways very quickly. The defendant broke a window and attempted to run away. Probable cause further was buttressed by the defendant's behavior immediately upon his investigative detention. The defendant appeared extremely nervous. The defendant disclaimed ownership of the knapsack. The defendant then claimed ownership, but, it appeared to Officer Myles Won that it seemed that the defendant did not want the police to see what was in the knapsack. No drugs or paraphernalia were seen in the house when Poepoe and Souza walked through; logic dictates that the defendant's drugs and/or paraphernalia had been stuffed into the defendant's knapsack prior to his hasty attempted escape.

Further, the exigencies which required the immediate seizure of the knapsack were two-fold. One, the police had probable cause to believe that dangerous drugs were inside the knapsack. They had reliable information that the defendant had been engaging in drug activity, yet, when they searched the residence, no drugs were seen. The drugs probably were in the knapsack. Common sense dictates that MPD could not, and should not, leave dangerous drugs in a knapsack behind for third parties to take. Common sense further dictates that if MPD did not take

16

the knapsack, the chain of custody of the knapsack would be broken, and the case against the defendant significantly weakened.  Two, upon arrest the MPD became the bailee responsible for the defendant's knapsack and the contents of the knapsack. Given their obligation to safeguard the personal property of the defendant, they were obligated to keep the defendant's knapsack for safekeeping, at least until the defendant made bail.

Given the existence of probable cause and the exigencies involved in this case, the seizure of the defendant's knapsack from 9:59 a.m. to approximately 11:50 a.m. was reasonable under the Fourth Amendment.

    2.    Defendant's Possessory
             Interest Was Minimal or Technical

Given that the defendant, as a person in custody at the MPD cellblock, could not have any personal items with him in the cellblock, his possessory interest in the knapsack during the investigation on January 23, 2005 was minimal.  For this reason, the seizure was completely reasonable under the Fourth Amendment.

The extent to which police interfere with a possessory interest is the "most important" in evaluating the reasonableness of a seizure.  In finding a 19 hour seizure of an apartment reasonable under the Fourth Amendment, the Segura Court noted that the defendants, whose possessory interests were cut off when the police illegally entered and searched their apartment, "were under arrest and in the custody of the police throughout the

17

entire period the agents occupied the apartment.  The actual
interference with their possessory interests in the apartment and
its contents was, thus, <u>virtually nonexistent</u>...We are not
prepared to say under these limited circumstances that the
seizure was unreasonable under the Fourth Amendment." <u>Segura v.</u>
<u>United States</u>, 468 U.S. at 813 (emphasis added).

     Again, it is the virtually nonexistent possessory
interest that distinguishes <u>United States v. Place</u>, 462 U.S. 696
(1983) from the case at bar.  The traveler in <u>Place</u> was extremely
inconvenienced by the seizure of his luggage.  An extended
seizure could disrupt travel plans, or, at the very least, force
the traveler to choose between delaying his flight and leaving
his luggage behind.  Both of these actions interfere with a
possessory interest.  That can't be said of the case at bar.  The
defendant was in custody, as were the <u>Segura</u> defendants, and was
not inconvenienced at all by the seizure of his knapsack.
Indeed, given that the defendant was in custody, MPD had the
obligation to keep and safeguard his knapsack as a bailee.

     Given that the defendant was under arrest and in
custody throughout the entire period during which the police held
his knapsack, any possessory interest he had was virtually
nonexistent.  When balanced against the need to investigate
criminal activity, a virtually nonexistent possessory interest

18

fails to make the delay from 9:59 a.m. to 11:50 a.m. unreasonable.

       3.   <u>The Police Acted With Due Diligence</u>

      In that the police acted with due diligence in their investigation, the seizure from approximately 10:00 a.m. to about 6:00 p.m. was completely reasonable under the Fourth Amendment.

      In addition to the extent of the interference with a possessory interest, courts have examined how diligently the police act to determine the reasonableness of a seizure.  The Ninth Circuit has not required law enforcement to rush through their investigations with lightning speed.  Instead, the Ninth Circuit has made allowances for magistrates who are not immediately available, for narcotics dogs that were located a distance from the evidence, for weekends, and for work that had to be done on other cases in examining Fourth Amendment reasonableness.  For example, the Ninth Circuit did not find it unreasonable that an agent with only reasonable suspicion waited 22 hours, effectively delaying delivery of the parcel via express mail by 7 hours, before requesting a canine to sniff a parcel because the agent had been busy making travel arrangements for witnesses scheduled to appear for trial the following week. <u>United States v. Hernandez</u>, 313 F.3d 1206, 1213 (9th Cir. 2002). Nor did the Ninth Circuit find it unreasonable that an officer would seize a parcel on a Friday, investigate throughout the day,

take the weekend off, continue to investigate on Monday, and finalize a search warrant application on Tuesday, which would not be signed until Wednesday in United States v. Gill, 280 F.3d at 929. The Gill Court pointed out that the officer was working as consistently as he could, and limited by the unavailability of others. Id. The Ninth Circuit did not find it unreasonable that investigators would seize a parcel for three days in order to divert the parcels to Anchorage in order to expose the parcels to a dog sniff in United States v. Aldaz, 921 F.2d at 231 (delay caused by diversion from Emmonak to Anchorage reasonable given that drug-detecting dogs were 700 miles away and not available in a bush community like Emmonak). Nor did the Aldaz Court find it unreasonable that the inspector in Anchorage waited overnight for a dog sniff. Id. Finally, the Aldaz Court did not find it unreasonable that it took five hours between the dog sniffs and the execution of the warrants. The five hour delay, the Aldaz Court held, "was largely attributable to the administrative requirements for securing search warrants." Id.

In the instant case, the MPD worked steadily and expeditiously from initial seizure to the execution of the warrant. At 9:59 a.m. Officer Myles Won arrested the defendant and carried the defendant's knapsack to the station. Shortly thereafter, Officer Won conferred with Lt. Wally Tom, who contacted MPD Officer Tod Wong, a certified dog-handler. Despite

20

the fact that Officer Wong was off-duty, Officer Wong immediately
spoke with Officer Won regarding the knapsack.  In the interest
of time, the two agreed to meet in Makawao, Maui.  By 11:50 p.m.,
less than 2 hours after the initial seizure, Driem alerted on the
knapsack.  Officer Wong proceeded to work, with Driem.  Officer
Wong collected the reports and photographs concerning 3042-A
Liholani Street.  He drafted a search warrant, attaching the
reports of Officers Poepoe and Won as Attachment A.  He made an
appointment to see the duty judge, the Honorable Reinette Cooper,
who resided up-country in Maui, i.e., at least one-half hour
drive away.  By 6:00 p.m. Judge Cooper had reviewed the
application, affidavit, and warrant, and had approved the search
of the knapsack.  By about 7:00 p.m. Officer Won had executed the
search warrant.

        The facts of this case reveal reasonable, professional,
expeditious efforts to investigate by the MPD.  There was no
unreasonable delay.  For this reason, the defendant's motion to
suppress must be denied.

III. <u>CONCLUSION</u>

        No seizure under the Fourth Amendment occurred, given
the lack of meaningful interference with the defendant's
knapsack.  Even if a Fourth Amendment analysis is performed,
however, the short seizure of the knapsack was reasonable, given
the existence of probable cause to search from the moment that

Officer Poepoe found the knapsack.  The defendant's statements and nervousness when confronted with the knapsack only enhanced probable cause.  Given his custody status, the defendant had, at best, minimal possessory interest.  The defendant cannot show that he was entitled to immediate bail, or that the police acted in bad faith to delay bail so as to keep "buy time" in their investigation.  The police, furthermore, worked diligently throughout that Sunday, January 23, 2005 in order to obtain a search warrant for the knapsack.  For all of the above-listed reasons, the defendant's motion should be denied.

DATED:  April 20, 2006, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By /s/ Loretta Sheehan
   LORETTA SHEEHAN
   Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

**<u>Served Electronically through CM/ECF</u>:**

Harlan Y. Kimura     hyk@aloha.net     April 20, 2006

      DATED:  April 20, 2006, at Honolulu, Hawaii.

                             /s/ Iris Tanaka