EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

RONALD G. JOHNSON #4532
Chief, Major Crimes

LORETTA SHEEHAN #4160
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:  loretta.sheehan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA


           IN THE UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF HAWAII


UNITED STATES OF AMERICA,     )    CR. NO. 05-00191 JMS
                              )
          Plaintiff,          )    MEMORANDUM IN OPPOSITION
                              )    TO MOTION TO SUPPRESS
      v.                      )    EVIDENCE DUE TO DEFECTIVE
                              )    AFFIDAVIT FOR SEARCH WARRANT;
JOSHUA KNEPPER,               )    CERTIFICATE OF SERVICE
                              )
          Defendant.          )
_____)

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . i-ii

I.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 6

     A.   THE SEARCH WARRANT WAS
          SUPPORTED BY PROBABLE CAUSE . . . . . . . . . . . . 6

     B.   IN THE ALTERNATIVE, THIS COURT SHOULD
          SHOULD REFUSE TO SUPPRESS EVIDENCE
          BASED UPON THE GOOD FAITH EXCEPTION . . . . . . . . 17

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 18

TABLE OF AUTHORTIES

CASES                                                    PAGE(S)

Illinois v. Gates,
     462 U.S. 213 (1983) . . . . . . . . . . . . . . . . 6

United States v. Bagley,
     765 F.2d 836 (9th Cir.),
     superseded by, 772 F.2d 482 (1985),
     cert. denied, 475 U.S. 1023 (1986) . . . . . . . . . . 15

United States v. Gil,
     58 F.3d 1414 (9th Cir.),
     cert. denied, 516 U.S. 969 (1995) . . . . . . . . . . 7

United States v. Goldstein,
     635 F.2d 356 (5th Cir. 1981) . . . . . . . . . . . . 13

United States v. Hernandez,
     937 F.2d 1490 (9th Cir. 1991) . . . . . . . . . . . 6, 7

United States v. Klein,
     626 F.2d 22 (7th Cir. 1980) . . . . . . . . . . 12, 13

United States v. Leon,
     468 U.S. 897 (1984) . . . . . . . . . . . . . . . . 17

United States v. Lingenfelter,
     997 F.2d 632 (9th Cir. 1993) . . . . . . . . . 10, 16, 17

United States v. Meyer,
     536 F.2d 963 (1st Cir. 1976) . . . . . . . . . . 11, 13

United States v. Ocampo,
     937 F.2d 485 (9th Cir. 1991) . . . . . . . . . . . . 7

United States v. Peacock,
     761 F.2d 1313 (9th Cir.),
     cert. denied, 474 U.S. 847 (1985) . . . . . . . . . . 7

United States v. Pitts,
     6 F.3d 1366 (9th Cir. 1993) . . . . . . . . . . . . 7

United States v. Sentovich,
     677 F.2d 834 (11th Cir. 1982) . . . . . . . . . . . 12

i

<u>CASES</u>                                                    <u>PAGE(S)</u>

<u>United States v. Spetz</u>,
    721 F.2d 1457 (9th Cir. 1983) . . . . . . . . . . . . 15

<u>United States v. Traylor</u>,
    656 F.2d 1326 (9th Cir. 1981) . . . . . . . . . . . . 15

<u>United States v. Venema</u>,
    563 F.2d 1003 (10th Cir. 1977) . . . . . . . . . . 11, 13

<u>United States v. Ventresca</u>,
    380 U.S. 102 (1965) . . . . . . . . . . . . . . . . 10

<u>United States v. Viera</u>,
    644 F.2d 509 (5th Cir. 1981) . . . . . . . . . . . . 13

<u>United States v. Watson</u>,
    551 F.Supp. 1123 (D.D.C. 1982) . . . . . . . . . . . 14

<u>United States v. Williams</u>,
    69 F.3d 27 (5th Cir. 1995) . . . . . . . . . . . . . 14

MEMORANDUM IN OPPOSITION TO MOTION TO SUPPRESS
<u>EVIDENCE DUE TO DEFECTIVE AFFIDAVIT FOR SEARCH WARRANT</u>

The United States of America, through Assistant U.S.
Attorney Loretta Sheehan, opposes the Motion to Suppress Evidence
Due to Defective Affidavit for Search Warrant, filed by the
defendant, Joshua Knepper, on April 14, 2006, in that, giving due
deference to the finding of probable cause made by the Honorable
Reinette Cooper, Judge of the Circuit Court, Second Circuit,
State of Hawaii, this Court should find that the warrant was
supported by probable cause.  The United States further argues
that should the search warrant affidavit be found insufficient,
that suppression is not the appropriate remedy in that, on
objective review, a reasonable officer would have held a good
faith belief in the validity of the warrant at execution.

I.    <u>FACTS</u>

As stipulated at the hearing on April 10, 2006, on
January 23, 2005, Officer Tod Wong of the Maui Police Department
submitted an application and affidavit in support of a search
warrant to the Honorable Reinette Cooper, Judge of the Circuit
Court, Second Circuit, State of Hawaii.  The application and
affidavit sought to search the knapsack which had been taken from
a residence at 3042-A Liholani Street in Pukalani, Maui earlier
in the day.

In applying for the search warrant Officer Wong's
affidavit relied not only upon an alert by a narcotics trained

canine, Driem, but also on the facts of the investigation as contained in Attachment A, i.e. the police reports of Officer Poepoe, Wikoli, and Won (see paragraph 25 of the affidavit).  The affidavit and Attachment A outlined probable cause to search as follows:

At about 0911 on January 23, 2005, Officers Won and Wikoli were assigned to investigate a "burglary type case in progress."  Officer Poepoe and Lt. Klingman arrived before Won and Wikoli, however, and met with the complainant, Matthew Souza.

Souza complained that his ex-roommate was still in his residence.  From the garage area, Poepoe observed the front door to be ajar.  As the officers approached, the door closed. Further checks revealed it to be locked.  Souza reached into his pockets to attempt to get the keys.

Poepoe learned that there was only one entrance/exit to this residence.  She then heard the sounds of glass breaking, and she and Lt. Klingman went around to the rear of the residence. They found the defendant exiting through a bottom glass jalousie type window.  Officer Poepoe handcuffed the defendant and Officer Won arrived.

Officer Won supervised the defendant while Officer Poepoe continued the investigation.  Souza elaborated that 3042-A Liholani Street was his residence.  The defendant had worked for him for approximately one year.  Souza had experienced problems

2

with the defendant and had asked him to leave the residence.
Souza related that he had printed out an eviction notice from the
Internet and that the defendant had signed it.  Souza told
Officer Poepoe that on January 13, 2005 the Knepper had given him
written notice that he was going to vacate the residence.

Souza explained to Officer Poepoe that he had come to
the residence on January 23, 2005 in an attempt to paint and to
see if anyone (the defendant included) was living there.  When
Souza arrived, he observed the defendant within the living room
area, behind a box filled with drugs and a glass pipe on the
table.  Souza tried talking with the defendant about going to
Aloha House.

Souza also complained of some items which apparently
had been stolen from outside the residence, a motorcycle and tire
rims.  He stated that he didn't report these items missing
because he was afraid of retaliation from the defendant.

Souza then escorted Officer Poepoe into the residence.
Souza was concerned that there still might be drugs in the
residence.  None were detected in the living room or bathroom
area.

Souza and Officer Poepoe entered the makai most
bedroom, which Souza indicated had been the defendant's bedroom.
Dresser drawers were taken out and empty; a bed was leaning up
against a wall; the closet was empty.  Souza pointed out a

knapsack, and said that it belonged to the defendant.  Officer
Poepoe went to the side of the residence and took Poloroid
photographs of the window from which the defendant had attempted
to escape.  In photograph #3, she noted the location of the
defendant's knapsack in relation to the window.

Officer Poepoe took the knapsack out to Officer Won.
She told him that Souza had identified it as belonging to the
defendant.

At about 9:35 a.m. Officer Won took possession of the
knapsack.  He asked the defendant if it was his knapsack.  The
defendant denied owning the knapsack.  Officer Won told the
defendant that he would be checking the knapsack for
identification.  The defendant immediately stated that the bag
was now his.  Officer Won asked him again if the knapsack was
his, and the defendant replied, "ya."

Officer Won sought consent to search the knapsack.  The
defendant refused.  Officer Won asked the defendant if he had any
of Souza's property in the knapsack.  The defendant initially
stated no, and related that Souza could check if he wanted, but
that he did not want the police to watch.  Officer Won told the
defendant that he would need to watch to see if anything stolen
would be recovered.  The defendant then withdrew his offer to
have Souza look into the knapsack.  Throughout this exchange, the
defendant appeared very nervous and concerned.

At 9:59 a.m. Officer Won arrested the defendant. Officer Won transported the knapsack to the Wailuku Police Station.

Officer Wong, assigned to the Vice Narcotics Division Canine Unit as a Narcotics Detection Canine Handler since 1994, was contacted regarding the defendant's knapsack. Officer Wong had received extensive training in handling narcotics detection canines, having attended the United States Border Patrol National Canine Faility and having completed the 10-week Canine Instructor's course there. Officer Wong also had received training from the California Narcotic Canine Association (CNCA). As of January 23, 2005, Officer Wong was certified as a Canine Trainer, and had last been certified less than two years prior.

Officer Wong handled narcotics detection canine, Driem. At some point in 2001, Driem received training with Officer Wong from the CNCA and was certified by the CNCA. In addition, Driem had received over 200 hours of specialized training from the Maui Police Department as a narcotics detection canine with Officer Wong. At the end of the training, Driem had passed his canine certification exam and was certified as a narcotics detection canine with the Maui Police Department's Vice Narcotics/Canine Unit. As an MPD canine, Driem re-certifies annually. As of January 23, 2005, Driem's certification was current.

On January 23, 2005, at approximately 11:50 a.m. Officer Tod Wong conducted a canine screening on the defendant's knapsack, using Driem.  Driem alerted/indicated to the odor of a controlled substance.

Based on the foregoing information, Judge Cooper approved the warrant, and Officer Wong searched the defendant's knapsack.

II.  <u>ARGUMENT</u>

    A.   THE SEARCH WARRANT WAS
         <u>SUPPORTED BY PROBABLE CAUSE</u>

This Court should deny the defendant's Motion to Suppress Evidence Due to Defective Affidavit for Search Warrant, in that it the affidavit was not "defective;" it provided adequate probable cause with which the Honorable Reinette Cooper could issue the search warrant for the defendant's knapsack.

A search warrant affidavit must be analyzed by a reviewing court in a two-part manner.  First, the reviewing court must consider "whether the magistrate had a substantial basis for concluding that the affidavit in support of the warrant established probable cause."  <u>United States v. Hernandez</u>, 937 F.2d 1490, 1494 (9th Cir. 1991).  Probable cause equates to a "fair probability" that evidence or contraband will be found.  <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).

Second, the reviewing court must consider whether the affidavit established "a reasonable nexus between the activities

6

supporting probable cause and the locations to be searched."
United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993),
quoting United States v. Ocampo, 937 F.2d 485, 490 (9th Cir.
1991).  On this second prong, the magistrate must "only conclude
that it would be reasonable to seek the evidence in the place
indicated in the affidavit."  United States v. Pitts, 6 F.3d at
1369, quoting United States v. Peacock, 761 F.2d 1313, 1315 (9th
Cir.), cert. denied, 474 U.S. 847 (1985).

        A magistrate is entitled, moreover, to draw "reasonable
inferences about where the evidence is likely to be kept, based
upon the nature of the evidence and the type of the offense."
United States v. Gil, 58 F.3d 1414, 1418 (9th Cir.), cert.
denied, 516 U.S. 969 (1995).  A magistrate is entitled to rely
upon the opinion of a trained and experienced law enforcement
officer in concluding that evidence is likely to be found in a
location.  Id.

        The standard of review for a search warrant is "less
probing than de novo review and shows deference to the issuing
magistrate's determination."  United States v. Hernandez, 937
F.2d at 1494.

        In the instant case, its clear that Judge Cooper was
correct in her assessment that she had a substantial basis to
believe that the defendant's knapsack contained evidence of
illegal activity or contraband, and that there was a reasonable

nexus between the defendant's illegal activity and his knapsack.
Souza's first hand complaints of trespass and drug use by the
defendant were corroborated by the defendant's attempt to escape,
by the condition of the house (i.e. the apparently abandoned
bedroom), by the defendant's inconsistent statements regarding
ownership of the knapsack, and by the defendant's extreme
nervousness during the conversations about looking into the
knapsack.  Probable cause existed <u>without</u> the presence of an
alert by a trained and certified narcotics detection dog, but the
MPD took the extra step to ensure a good warrant.  When Driem
alerted upon the knapsack, Judge Cooper had more than enough
evidence with which to issue a search warrant.

          Despite the abundance of evidence supporting a "fair
probability" that evidence or contraband would be found in the
defendant's knapsack, the defendant complains that the affidavit:
1) did not describe "what kind of 'specialized training" Driem
received; 2) did not contain "any averments that 'Driem' had been
trained to detect Marijuana or Methamphetamine"; 3) did not
explain "who or what organizations conducted the 'canine
certification exam'"; 4) did not explain what criteria were used
"to determine what constitutes 'passed' when 'Driem' was
administered the canine certification exam"; 5) did not explain
when Handler Wong was certified as a dog handler; 6) did not
explain when Handler Wong was last re-certified; 7) contained

questions regarding the impartiality of Handler Wong, given that
Handler Wong trained Driem; 8) did not explain how Driem alerted
to the knapsack; 9) did not explain what other items were used in
the canine screening; 10) did not describe the dog sniff in
sufficient detail to ensure the impartiality of Driem's alert.

The United States contests the defendant's complaint
#2, that the affidavit did not state that Driem had been trained
to detect Methamphetamine or Marijuana.  A common sense reading
of the affidavit clearly indicates that Driem had been trained
and certified to detect controlled substances.

Paragraph 20 of the affidavit, in which Driem's
qualifications are discussed, clearly flows from paragraphs 18
and 19, and, in fact, refers the reader back to paragraph 18.  A
common sense reading of the three paragraphs together indicates
that Officer Wong is a trained narcotics handler and that he used
a dog named Nicky to examine items for the presence of
"Marijuana, Cocaine, Hashish, Heroin, Methamphetamine and other
controlled substances" until 2001.  In 2001 Nicky retired and was
replaced by the MPD Narcotics Detection Canine Driem.  Driem also
received the 200 hours training that Nicky received, and also was
certified as a narcotics detection canine.  Driem subsequently
passed every annual re-certification exam, and, as of the date of
the affidavit, Driem's certification was current.

The Ninth Circuit has noted that search warrants and affidavits frequently are "drafted by nonlawyers in the midst and haste of a criminal investigation," and therefore should "be tested and interpreted in a common sense and realistic, rather than a hypertechnical, manner." United States v. Lingenfelter, 997 F.2d 632, 639 (9th Cir. 1993), quoting United States v. Ventresca, 380 U.S. 102 (1965).  While Officer Wong's affidavit could have been made clearer by repeating the language of paragraph 18, rather than by simply directing the reader back to paragraph 18 i.e. "refer to above information listed under line no. 18), Officer Wong chose to go by way of reference.  It's still clear that Driem was a certified narcotics dog at the time of the affidavit and application.  The defendant is urging this Court to read the affidavit in a hypertechnical manner, and that is not what the law requires.

Addressing the defendant's complaints ##1-10, federal courts uniformly have rejected arguments that, in order to establish a narcotics detector dog's and/or handler's reliability for probable cause purposes, search warrant affidavits must detail the kind of specialized training the dog and/or handler received, or the kind of narcotics used in training of the dog and/or handler, or the organizations which certified the dog and/or handler, or what criteria were used to determine that a dog and/or handler could be certified.  Under prevailing Federal

10

law, a dog's and handler's reliability can be established by the
warrant affidavit's representation that the canine and/or handler
have been so trained and certified.

For example, in <u>United States v. Meyer</u>, 536 F.2d 963
(1st Cir. 1976), the search warrant merely stated that the canine
was a "trained dog," and that the dog had reacted positively to
certain articles.
In rejecting the defendants' arguments that the canine was not
reliable, the First Circuit said:

> Appellants theorize, however, that the
> affidavit failed to sufficiently describe the
> dog's proficiency in the detection of
> narcotics.  We are not impressed with this
> argument...From the record it is evidence
> that the affiant was an experienced DEA agent
> and that the dog had been 'trained' and used
> in drug investigations.  Thus the magistrate
> could reasonably infer that the 'trained dog'
> had attained a high degree of proficiency in
> detecting the scent of narcotics.

> 536 F.2d at 965-6 [emphasis added].

> Likewise, in <u>United States v. Venema</u>, 563 F.2d 1003

(10th Cir. 1977), the Tenth Circuit observed:

> In this regard the defendant takes particular
> aim at the statement in the [warrant]
> affidavit that Chane was a 'trained,
> certified, marijuana sniffing dog.'  Such,
> according to counsel, is a conclusory
> statement and does not allow the issuing
> judge to exercise his independent judgement
> on the matter.  We do not agree that Chane's
> educational background and general
> qualifications had to be described with the
> degree of specificity argued for by
> counsel...we agree with the reasoning of

11

Meyer and the statement in the present
affidavit that Chane was trained and
certified as a marijuana-sniffing dog is
sufficient.

563 F.2d at 1007 [emphasis added].

Similarly, in <u>United States v. Klein</u>, 626 F.2d 22, 27

(7th Cir. 1980), the Seventh Circuit said:

Defendants urge that if we conclude, as we
do, that the use of a trained narcotics dog
is not a search, we should nevertheless find
the affidavit supporting the warrant to be
fatally deficient for not specifying the
dog's reliability as a drug detector...We
find sufficient, however, the affiant's
representation to the magistrate that the dog
'graduated from a training class in drug
detection in October 1978' and has proven
reliable in detecting drugs and narcotics on
prior occasions. [emphasis added].

In <u>United States v. Sentovich</u>, 677 F.2d 834, 838 n.8

(11th Cir. 1982), the Eleventh Circuit similarly observed:

Sentovich also alleges that there was
insufficient evidence of the reliability of
the dog...to be used as a basis for the
search warrant.  His argument is that a mere
statement that the dog had been trained in
drug detection was not enough without an
accompanying statement that the dog had
proved reliable in the past and that an
experienced handler was with the dog...We
believe, in any event, that his argument is
without merit.  The case on which Sentovich
relies [the aforesaid <u>Klein</u> case] does state
that statements that a dog had training and
had proved reliable in the past were
sufficient indicia of the dog's reliability.
The court did not, however, state that the
handler had to be trained or that training
alone was insufficient to show reliability.
Two other circuits have held that training of
a dog alone is sufficient proof of

12

reliability [citing <u>Meyer</u> and <u>Venema</u>].  We
endorse the views of those circuits.
[emphasis added].

<u>Id</u>.

In <u>United States v. Goldstein</u>, 635 F.2d 356, 362 (5th

Cir. 1981), the Fifth Circuit noted:

Appellants further contend that Agent
Maroney's supporting affidavit for the search
warrant was deficient because it did not
allege details about Zeke's training or
reliability.  Maroney's allegations with
respect to Zeke's qualifications were
sufficient [citing <u>Klein</u> and <u>Venema</u> with
approval].

Furthermore, in <u>United States v. Viera</u>, 644 F.2d 509

(5th Cir. 1981), illegal drugs had been found during a warranted

search of the defendants' luggage after a positive canine alert.

The defendants argued on appeal that "the [warrant] affidavit was

deficient in that it only reported previous successful drug

identifications by the dogs, not their percentage of accurate

results."  <u>Id</u>. at 511.  In affirming the defendants' convictions,

the <u>Viera</u> Court said:

[T]he affidavit stated that one of the dogs
had successfully discovered drugs on 409
occasions, another in over 100 instances.
Those records surely created probable cause
to believe that the suitcases contained
cocaine, heroin, or a like substance.  The
warrant was issued to search for those drugs,
and was clearly proper.

<u>Id</u>. at 512.

13

The holdings of these cases remain good law at the current time.  In <u>United States v. Williams</u>, 69 F.3d 27 (5th Cir. 1995), the Fifth Circuit utterly rejected the defendant's proffered theory that an affidavit for a search warrant must show how reliable a drug-detecting dog has been in the past, as "without jurisprudential support in this circuit."  <u>Id</u>. at 28.

Perhaps the most apt and succinct response to the defendant's 10 listed shortcomings was made in <u>United States v. Watson</u>, 551 F.Supp. 1123 (D.D.C. 1982), in which the affidavit only indicated that the canine was assigned to the "Narcotics Branch" but gave no description whatsoever of the dog's prior training and experience.  In rejecting the suppression motion the district court observed:

> ...the magistrate could reasonably have inferred that the dog's skills were not those of an ordinary housepet.  While canine-conducted narcotics searches may have encountered some judicial skepticism in the past, the technique is now sufficiently well-established to make a formal recitation of a police dog's curriculum vitae unnecessary in the context of ordinary warrant applications.

<u>Id</u>. at 1127.

Ninth Circuit law is consistent with its sister circuits.  For example, the Ninth Circuit found probable cause based on a single dog sniff listed within an affidavit, in which no training by either the handler or the dog, no certifications of either the handler of the dog, and no manner of dog sniff was

discussed.  United States v. Spetz, 721 F.2d 1457, 1464 (9th Cir.

1983), reversed on other grounds, United States v. Bagley, 765

F.2d 836 (9th Cir.), superseded by 772 F.2d 482 (1985), cert.

denied, 475 U.S. 1023 (1986).  The Spetz Court approved a warrant

in which the affidavit merely read:

> Inspector Jackson further advised me that he
> was advised by Customs Dog Handler James
> McCauley that his dog, "Humphrey," (C-148)
> alerted positively for the presence of
> narcotics on a wooden crate, called a "van
> pack."  Dog Handler McCauley also advised
> Jackson that his dog "Humphrey" has correctly
> alerted on 60 out of 66 occasions for the
> presence of narcotics.  These instances were
> verified by searches conducted subsequent to
> the alert by "Humphrey."

> Id. at 1464 n.15.

The Spetz Court noted that a validly conducted dog

sniff can supply the probable cause for issuing a search warrant

only if sufficient reliability is established by the application

for the warrant.  Despite the lack of details regarding training

or certifications, the Spetz Court found that "on its face" the

single sniff by "Humphrey" was sufficiently reliable,

particularly in light of a second alert by a less experienced

dog, "Randy," who had alerted two out of two times correctly.

Id.

Similarly, in United States v. Traylor, 656 F.2d 1326

(9th Cir. 1981), the search warrant affidavit did not indicate

how or when the dog was certified, or whether the certifications
were current.  The affidavit stated:

> The dog was certified by the Los Angeles
> Police Department for the detection of
> heroin, cocaine and marijuana.  The dog had
> alerted on 705 narcotic training aids which
> had actually contained drugs, had been
> responsible for in excess of 50 seizures, and
> two weeks previous had alerted on all the
> bags in a seizure of 35 pounds of cocaine.

Id. at 1330.

The Ninth Circuit held that this warrant affidavit
established probable cause to search, specifically noting that
"[w]ith the dog's training record, as well as the dog's past
performance record being presented, the magistrate could properly
evaluate the reliability of the dog's reactions." Id. at 1331.

The instant case is most similar to United States v.
Lingenfelter, supra.  The Lingenfelter Court approved the warrant
based upon 1) an alert by a narcotics detection canine who had
participated in approximately 300 hours of training, 500
investigations and had never given a false alert, and 2) an
anonymous tip which was largely corroborated through independent
police work.  Id. at 639.  In the instant case, the handler,
Officer Tod Wong, had been through extensive and on-going
training.  Officer Wong was currently certified as a Narcotics
Canine Handler and Instructor.  The dog, Driem, had been through
at least 200 hours of training and had achieved certification to
detect controlled substances.  In addition, Driem was subjected

16

to the rigors on annual re-certification.  As of January 23, 2005, Driem was certified.

Driem's alert, in addition to the other evidence contained within Attachment A, as in <u>Lingenfelter</u>, provided more than enough probable cause for Judge Cooper to issue the warrant, and the defendant's motion should be denied.

B.    IN THE ALTERNATIVE, THIS COURT SHOULD
      SHOULD REFUSE TO SUPPRESS EVIDENCE
      <u>BASED UPON THE GOOD FAITH EXCEPTION</u>

This Court should deny the defendant's requested relief of suppression, based on the "good faith" exception to the exclusionary rule.

Evidence gathered as a result of an invalid search warrant may not be suppressed if the officers objectively would have had a good faith belief in the validity of the warrant. <u>United States v. Leon</u>, 468 U.S. 897 (1984).  The reviewing court's inquiry is "confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  <u>Id</u>. at 922 n.23.

Under this objective standard, this Court can examine the search warrant, affidavit and Attachment A to see that a reasonably well-trained officer, given the enumeration of the investigation and the dog alert, would not know that the search

17

was illegal.  As such, this Court should decline to suppress any evidence found in the defendant's knapsack.

III. <u>CONCLUSION</u>

The affidavit and Attachment A provided Judge Cooper with more than enough probable cause with which to issue the search warrant.  The defendant's complaints regarding the affidavits failures to list details of Driem's or Wong's training run contrary to multiple rulings from circuits across the country.  In the alternative, should the Court disagree with Judge Cooper, and find no probable cause, this Court should decline to suppress evidence in that, under an objective standard, any well-reasoned police officer would not know that the search of the defendant's knapsack was illegal.

DATED: April 21, 2006, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By  /S/ Loretta Sheehan
   LORETTA SHEEHAN
   Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

<u>CERTIFICATE OF SERVICE</u>

   I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

**<u>Served Electronically through CM/ECF</u>:**

Harlan Y. Kimura  hyk@aloha.net  April 21, 2006

   DATED: April 21, 2006, at Honolulu, Hawaii.

       /s/ Iris Tanaka