IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00191 JMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTIONS TO SUPPRESS |
| JOSHUA KNEPPER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS

I. INTRODUCTION

Defendant Joshua Knepper, by way of two separate motions,[1] seeks an order from the court suppressing evidence obtained as a result of a search of his backpack. On April 24, 2006, the court received oral testimony from Maui Police Department ("MPD") Officer Myles Won and MPD Officer Tod Wong. After reviewing Knepper's motions, the supporting and opposing memoranda, the testimony of the witnesses, and the arguments of counsel, the court DENIES the motions to suppress.

---

[1] Defendant's motions are captioned: (1) "Motion to Suppress Evidence in Backpack due to Lack of Probable Cause, or Alternatively, Delay in Conducting Canine Search"; and (2) "Motion to Suppress Evidence due to Defective Affidavit for Search Warrant."

## II.  BACKGROUND

The court set forth the relevant background facts in its October 4, 2005 Order Denying Defendant's Motion to Suppress, and the court incorporates those background facts herein.

On April 10, 2006, the court heard arguments on Knepper's second motion to suppress, captioned "Motion to Suppress Evidence due to Illegal Arrest." After hearing testimony from MPD Sergeant Doralyn Poepoe (who testified for the second time in this case) and MPD Officer Won, and after considering the parties' written submissions and oral arguments, the court denied this motion to suppress in an oral ruling from the bench.  Also on April 10, 2006, the court granted Knepper's request to file a third motion to suppress.

On April 14, 2006, Knepper filed the two additional motions to suppress now before the court.  In the first motion, Knepper contends that the police lacked probable cause to search Knepper's backpack or, in the alternative, that the delay in subjecting Knepper's backpack to a canine sniff was unreasonable.  In the second motion, Knepper contends that the affidavit supporting the search warrant -- based on a dog alert to the presence of unlawful drugs in Knepper's backpack -- was defective because it failed to adequately set forth the reliability of canine Driem.

2

On April 24, 2006, the court heard arguments on these motions.  The prosecution also presented two witnesses:  Officer Won (who testified for the second time in this case) and Officer Tod Wong.

The following facts, presented at the April 10 and April 24 hearings, are relevant to the two motions currently at issue.

Sergeant Poepoe testified that Matthew Souza told her that Knepper was "doing drugs within the residence."  Transcript of Proceedings ("Tr.") 4/10/06 at 17.  After Knepper was placed in custody, Souza specifically requested that the police search the cottage to see whether Knepper had left any drugs in the cottage. Sergeant Poepoe further testified that she saw no drugs anywhere within the cottage.  While inside the cottage, Souza identified a backpack located in Knepper's former bedroom as belonging to Knepper.  Sergeant Poepoe then took the backpack to Officer Won, outside of the cottage.  Tr. 4/10/06 at 19-20.

Officer Won testified that Sergeant Poepoe brought him the backpack at 9:34 a.m. and told him that the backpack belonged to Knepper.  Tr. 4/10/06 at 41.  Officer Won asked Knepper if the backpack was his, and Knepper initially said that it was not.  Officer Won then informed Knepper that he (Officer Won) would have to check the bag for identification, at which point Knepper said that the bag was indeed his.  Officer Won testified that Knepper was "obviously very

3

nervous" and that Knepper "appear[ed] very concerned" about the backpack.  Tr.

4/10/06 at 36.  Officer Won confirmed with Knepper that the backpack was indeed

his, at which point he asked Knepper for his consent to search the bag.  Officer

Won explained that the backpack was very heavy and that he wanted to search the

bag to see if any of Souza's belongings were in the bag.  Tr. 4/10/06 at 35-36.

Knepper stated that Souza could search the bag, so long as the police did not

observe Souza while he was searching; when Officer Won told Knepper that this

arrangement was unacceptable (because Officer Won would want to observe

Souza's recovery of the items as evidence), Knepper withdrew his conditional

consent.  Tr. 4/10/06 at 36-37.

        Knepper was arrested at 9:59 a.m., at which point Officer Won drove

Knepper and his backpack to the Wailuku Police Station.  The journey took

approximately twenty to thirty minutes.  Officer Won testified that standard MPD

protocol is to secure prisoners' personal belongings upon arrest; he also testified

that he took Knepper's backpack with him because he thought it may contain

evidence of a crime.  He further testified that, while driving to the police station,

he and his supervisors decided to subject Knepper's backpack to a canine screen

for drugs.

At the station, Knepper was fingerprinted and processed by Officer Won.  Bail was set at $200, which is standard for a charge of criminal trespass in the first degree.  Bail was not set for promoting a dangerous drug in the first degree, because the investigation into that charge was still ongoing.

Officer Won then drove the backpack to Makawao, approximately twenty to thirty minutes from the Wailuku police station, to meet Officer Tod Wong (the handler for canine Driem).  At 11:50 a.m., Driem alerted to the backpack (indicating to Officer Wong that the backpack contained illegal drugs).

Officer Wong took the backpack as evidence and went back to the Wailuku police station to draft a search warrant.  Attached to the proposed search warrant were the following:  (1) Officer Wong's affidavit, containing a description of Driem's alert to the backpack; and (2) various reports written by Officer Won, Sergeant Poepoe, and Officer David Wikoli, setting forth the relevant background facts to the case.  Government Exhibit 1, 4/24/06.  The affidavit itself, however, mentions nothing about Souza, the absence of drugs in the cottage, or Knepper's initial denial of ownership of the backpack.

The affidavit attached to the search warrant clearly establishes Officer Wong's training and experience in the field of illegal drug identification and investigation.  The affidavit also clearly establishes Officer Wong's training and

experience as a canine handler.  The affidavit, however, is *far* less clear as to

canine Driem's qualifications.  Officer Wong stated in the affidavit:

> 17.    That Affiant has received specialized training from California Narcotic Canine Association "CNCA" and that Affiant along with Canine "Driem" passed a "CNCA" canine certification course;

> 18.    That during the dates of July 1994 through January 1995, Affiant and his canine "NICKY" received over two hundred (200) hours of specialized training in locating and indicating on various controlled substances. "NICKY" will alert to Marijuana, Cocaine, Hashish, Heroin, Methamphetamine and other controlled substances.  "NICKY" will also alert to the scent thereof coming from currency, notes, documents, and containers such as baggage, parcels, mail, cargo, dwellings and motor vehicles, and/or other evidence that may have been utilized in the trafficking or distribution of illicit drugs.  That this training was conducted by Sergeant Ramsay ANAKALEA of the Maui Police Department's Vice Narcotics/Canine Unit; that Affiant and canine "NICKY" passed a canine certification exam on January 12, 1995 and re-certify annually;

> 19.    That on October 10, 2001, Canine "Nicky" was retired from the Maui Police Department and was replaced by Maui Police Department Detection Canine "Driem";

> 20.    That during the dates of April 2001 through October 2001, Affiant and his "new" canine "Driem" incurred over two hundred (200) hours of specialized training as a canine team.  That the training of canine "Driem" was conducted by Canine Instructor Tod WONG, of the Maui Police Department and that on October 9, 2001 canine "Driem" passed a canine certification exam and is re-

6

certified annually and is currently certified (refer to
above information listed under line no. 18) . . . .

Record ("R.") at 73, Ex. A at A-4 to A-5.

Officer Wong contacted the Honorable Reinette Cooper, Judge of the
Second Circuit Court of the State of Hawaii, and arranged to meet her at her home
at approximately 6:00 p.m.  Judge Cooper signed the warrant, and Officer Wong
returned to the Wailuku police station and executed the warrant.

### III. <u>ANALYSIS</u>

In his first motion, Knepper argues that the police lacked probable
cause to seize Knepper's backpack from the cottage bedroom; he further argues
that if the "seizure" did not take place until 11:50 a.m., then MPD's detention of
his backpack for nearly two hours was unreasonable and therefore violated the
Fourth Amendment.  In his second motion, Knepper argues that the search warrant
was defective (and that the results of the search should be suppressed) because the
affidavit failed to set forth the qualifications and reliability of canine Driem.  The
court disagrees and DENIES Knepper's motions.  The court first concludes that,
because the police did not interfere with Knepper's possessory interest in the
backpack while Knepper was in custody, Knepper's Fourth Amendment rights
were not violated.  The court further concludes that, even if the seizure occurred at

7

the Souza residence, the police had probable cause to search Knepper's backpack within a few minutes of Knepper's arrest (such that the delay in securing the dog sniff did not implicate the Fourth Amendment).  The court then concludes that, even if the affidavit failed to set forth sufficient facts to establish probable cause, Officer Wong acted in good faith in executing the warrant and that the results of the search need not be suppressed.

A.     The police did not interfere with Knepper's possessory interest in the backpack, such that no Fourth Amendment violation occurred

Knepper argues that the police did not have probable cause to seize his backpack at the time of his arrest; he further argues that the police violated his Fourth Amendment rights by seizing the bag just before 9:34 a.m.[2] and detaining it until 11:50 a.m. (the time of the canine sniff, at which point Knepper apparently concedes that the police had probable cause to seize the backpack).  Knepper's argument rests on the purported unreasonableness of the two hour detention between the time the backpack was "seized" and the time of the canine sniff.

The court disagrees.  The delay in conducting the canine sniff did not violate Knepper's Fourth Amendment rights because the backpack was already

---

[2] Officer Won testified that he received the bag from Sergeant Poepoe at 9:34 a.m.; because Sergeant Poepoe testified that she picked up the bag inside the cottage and took it outside to Officer Won, it appears that Sergeant Poepoe picked up the bag inside the cottage shortly before 9:34 a.m.

appropriately in police custody, such that the police did not interfere with

Knepper's possessory interest in his backpack.

"A 'seizure' of property occurs when there is some meaningful

interference with an individual's possessory interests in that property." *United*

*States v. Jacobsen*, 466 U.S. 109, 113 (1984).  "Absent such interference, no

fourth amendment seizure will be found."  *United States v. England*, 971 F.2d 419,

420 (9th Cir. 1992).  "It is the extent of the interference with the defendant's

possessory interest in his property, not the physical movement of the property, that

determines whether a seizure has occurred. " *Id.*

Shortly before 9:34 a.m., Sergeant Poepoe picked up the backpack

and took it outside to determine whether the backpack was indeed Knepper's.

This act, in and of itself, was not a seizure.[3]  Simply picking up the bag and taking

it to Knepper to determine whether Knepper was, in fact, the owner of the

backpack, was not a seizure.  In fact, it was the only reasonable step for the police

to take under the circumstances:  Souza had informed the police that Knepper was

---

[3] In footnote 6 of the court's October 4, 2005 order, the court stated that "[a]ny challenge to conduct after the backpack was found *and seized in* Knepper's room would have to be brought in a subsequent motion."  (Emphasis added.)  The court did not intend this statement to be a legal conclusion as to whether the backpack was "seized" under the Fourth Amendment at that moment.  Instead, it was intended to reflect that the backpack was found in Knepper's former bedroom and then taken out of the room by the police.  The issue of when the backpack was seized under the Fourth Amendment was not before the court in this first motion.

trespassing and had subsequently identified the backpack as Knepper's.  Simply leaving the backpack in the cottage, without making any further attempt to determine its ownership, would have been reckless.  Thus, Sergeant Poepoe's decision to take the backpack outside to determine its ownership was not a seizure.

Officer Won testified that standard MPD protocol is to secure prisoners' personal belongings upon arrest; in other words, once the police determined that the backpack belonged to Knepper, they would have taken the backpack with them to the station regardless of whether they believed the backpack contained contraband.  Knepper was formally arrested at 9:59 a.m., but there is no dispute that he was handcuffed and in custody as of 9:13 a.m.  There is also no dispute that Knepper was still in custody at 11:50 a.m., such that there is no way he would have reasserted control over his backpack at any time before the police conducted the canine sniff of the backpack.  Because the police did not in any way interfere with Knepper's possessory interest in the backpack before 11:50 a.m., and because the backpack was lawfully in MPD's custody during this time period (because it was a personal item belonging to Knepper), the delay in conducting the canine sniff did not implicate Knepper's Fourth Amendment rights.

B.    There was probable cause to search the backpack independent of the canine sniff, such that the delay in conducting the canine sniff is irrelevant

Given the court's finding that the police did not interfere with Knepper's possessory interest in the backpack, the court need not decide whether the police had probable cause, or even reasonable suspicion, to seize or detain the bag at the time of Knepper's arrest. *See England*, 971 F.3d at 421 ("Here, we need not consider whether the postal inspectors had reasonable and articulable suspicion to seize the packages before they obtained the search warrants, because until the packages were searched pursuant to those warrants, no seizure occurred."); *United States v. Hernandez*, 313 F.3d 1206, 1213 (9th Cir. 2002) (explaining that detention of the defendant's parcel for twenty-two hours was not unreasonable, where the detention only interfered with the defendant's possessory interest for seven hours and this seven-hour delay was reasonable under the circumstances).

Nevertheless, the court finds that even if the police "seized" Knepper's backpack at Souza's cottage at some point between 9:34 a.m. and 9:59 a.m., the police had probable cause to search the backpack at that point (such that the delay in securing a dog sniff was inconsequential).

As the Ninth Circuit has explained:

11

> Probable cause exists when there is a fair probability or
> substantial chance of criminal activity. It is well-settled that
> the determination of probable cause is based upon the totality
> of the circumstances known to the officers at the time of the
> search. When a search warrant is based solely on an
> informant's tip, . . . the proper analysis is whether probable
> cause exists from the totality of the circumstances to determine
> a sufficient level of reliability and basis of knowledge for the
> tip.

*United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004) (citations and

internal quotation signals omitted).

When Sergeant Poepoe arrived at the cottage on January 23, 2005,

Souza told her that Knepper was trespassing and that there was some "drug

activity" going on in the cottage. Tr. 4/10/06 at 11. As Sergeant Poepoe and

Souza approached the front door (which was ajar), the door closed and locked and

Knepper attempted to flee through a bedroom window. It was more than fair for

Sergeant Poepoe to assume that defendant shut and locked the door, an act

inconsistent with someone who is not trespassing. The fact that Knepper broke a

window and attempted to escape out the back is further evidence that Knepper was

trespassing. Thus, Sergeant Poepoe was able to confirm much of what Souza had

told her, demonstrating that Souza was a credible informant. Thus, Sergeant

Poepoe acted reasonably in believing Souza's statement that Knepper had been

using drugs. The drugs were nowhere to be found in the cottage, and Souza stated

12

that the backpack belonged to Knepper, such that a reasonable officer would have suspected that Knepper had put the drugs in his backpack.

While Souza's statement and the absence of drugs in the cottage may not have been enough to establish probable cause to believe that the backpack contained drugs or drug paraphernalia, Knepper's nervousness when questioned about the backpack -- first denying the bag was his, then admitting it was his -- gave the police probable cause to believe that the backpack contained contraband and therefore allowed the police to seize the backpack.   Under the totality of the circumstances -- Souza's statement that Knepper was using drugs in the cottage, Knepper's attempt to flee, the absence of any drugs in the cottage, and Knepper's initial denial that he owned the backpack (followed by his admission that he did own the backpack) -- the police had probable cause to search the backpack.  *See United States v. Seybold*, 726 F.2d 502, 504 (9th Cir. 1984) ("[P]robable cause is a fluid concept turning on the 'assessment of probabilities in particular factual contexts.'" (Quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983).)).

The delay of approximately eight hours between the time the police developed probable cause and the time Judge Cooper signed the search warrant was not unreasonable under the circumstances, given that Officer Wong had to draft a warrant and find a Judge able to sign a search warrant on a Sunday.

13

*See United States v. Van Leeuwen*, 397 U.S. 249, 252-53 (1970) (delay of twenty-seven hours between development of probable cause and issuance of search warrant not unreasonable under the circumstances). Therefore, Knepper's Fourth Amendment rights were not violated based on any delay in searching Knepper's backpack.

C.     Defective affidavit

Knepper next argues that the search warrant was defective because Officer Wong's affidavit fails to set forth Driem's qualifications and reliability. The court concludes that even if the warrant was defective, the results of the search conducted pursuant to that warrant need not be suppressed because of the "good faith" exception articulated in *United States v. Leon*, 468 U.S. 897, 908 (1984) ("[W]hen law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system.").[4]

---

[4] The court gave Knepper leave to file an additional brief on the issue of whether the officer who drafted the allegedly faulty affidavit may take advantage of the *Leon* "good faith" exception. The court received this brief (as well as a separate Reply Memorandum) on May 4, 2006, but defense counsel's arguments do not persuade the court that Officer Wong is not entitled to the good faith exception merely because he drafted the affidavit. The court recognizes that "[t]he 'good faith' exception does not extend to situations in which the officer obtains a warrant based on a 'bare bones' affidavit and then relies on good faith execution by innocent colleagues in order to sustain the warrant." *United States v. Michaelian*, 803 F.2d 1042, 1046 (9th Cir. 1986). The good faith exception incorporates an objective standard, however, and as

(continued...)

The United States argues that the affidavit is clear as to Driem's

qualifications.  The court is not convinced.  At best, the affidavit is ambiguous as

to Driem's qualifications when it states, "refer to above information listed under

line no. 18" in attempting to set forth Driem's training and experience.[5]

According to the affidavit, Driem has been with MPD for over four

and a half years.  The court would expect that, at some time within that four and

one half years, the Maui Police Department would have updated this affidavit to

specifically indicate Driem's qualifications, training, experience, and/or reliability.

Simply put, the court is not impressed with the MPD's carelessness in preparing

the search warrant in this case.

Nevertheless, the court need not decide whether the warrant was, in

fact, defective in this case.  Even if Knepper is correct that the affidavit was

defective and insufficient for issuance of the warrant, the court concludes that

Officer Wong was entitled to execute the warrant because an objectively

---

[4](...continued)
discussed *infra*, the court concludes that Officer Wong's actions were objectively reasonable.

[5] Whether an affiant must set forth the reliability of the canine, in addition to the canine's qualifications and training, however, is unclear.  *See*, *e.g.*, *United States v. Meyer*, 536 F.2d 963, 966 (1st Cir. 1976) ("From the record it is evident that affiant was an experienced DEA agent and that the dog had been 'trained' and used in drug investigations. Thus the magistrate could reasonably infer that the 'trained dog' had attained a high degree of proficiency in detecting the scent of narcotics.").

reasonable officer would have a good faith basis to believe that the search warrant

was valid.  As the Supreme Court explained in *United States v. Leon*, 468 U.S.

897, 923 (1984):

> Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.  *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S., at 610-611, 95 S.Ct., at 2265-2266 (POWELL, J., concurring in part); see *Illinois v. Gates*, *supra*, 462 U.S., at 263-264, 103 S.Ct., at 2345-2346 (WHITE, J., concurring in the judgment).  Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient--*i.e.*, in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid. Cf. *Massachusetts v. Sheppard*, 468 U.S. [981], at 988-991, 104 S.Ct. [3424], at 3428-3430 [(1984)].

Officer Wong's affidavit is not so "facially deficient . . . that the executing officers

cannot reasonably presume it to be valid."  At the very least, the warrant appears

to attempt to explain that Driem is a trained drug dog and that Driem alerted to the

presence of controlled substances within Knepper's backpack.  Therefore, even if the affidavit failed to set forth sufficient facts to establish probable cause, Officer Wong acted in good faith and the evidence obtained from Knepper's backpack need not be suppressed.

## IV.  CONCLUSION

For the reasons stated above, Knepper's motion to suppress is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii , May 8, 2006.



J. Michael Seabright
United States District Judge

United States v. Knepper, Criminal No. 05-00191JMS; Order Denying Defendant's Motion to Suppress

17